John REVEL, Plaintiff,

v.

AMERICAN EXPORT LINES, Inc., Defendant and Third Party Plaintiff,

and

Whitehall Terminal Corporation, Defendant (UNITED STATES of America and Whitehall Terminal Corporation, Third Party Defendants).

Civ. A. No. 2240.

United States District Court
E. D. Virginia,
Norfolk Division.

May 16, 1958.

Sidney H. Kelsey and L. David Lindauer, Norfolk, Va., for Revel.

Seawell, Johnston, McCoy & Winston, John W. Winston and Harry E. McCoy, Norfolk, Va., for American Export Lines.

William B. Eley, Norfolk, Va., for Whitehall Terminal Corp.

L. S. Parsons, Jr., U. S. Atty., John M. Hollis, Asst. U. S. Atty., Norfolk, Va., and Robert E. Klages, Special Assistant, Dept. of Justice, Washington, for United States.

WALTER E. HOFFMAN, District Judge.

Plaintiff, Revel, a longshoreman employed by Whitehall Terminal Corporation (hereinafter referred to as Whitehall), was injured on June 9, 1956, while engaged in the peformance of his duties as a slinger loading the S.S. Executor, a vessel owned and operated by the defendant, American Export Lines, Inc. (hereinafter called Export), at a time when the Executor was docked at Pier 1, Army Base, Norfolk, Virginia.

Export had space-chartered a portion of the cargo space to the United States of America, pursuant to a contract executed with Military Sea Transport Service (M.S.T.S.). The personnel to load and stow the cargo on board the Executor was to be supplied by M.S.T.S. in accordance with said contract. In turn, M.S.T.S. contracted with Whitehall, a stevedoring firm, to furnish said personnel.

At the time of the accident longshoremen employees of Whitehall were on board the ship in charge of loading operations, including the operation of the ship's winches and gear owned and rigged by Export. Plaintiff was *working on the pier*, alongside the No. 1 hold, preparing cargo to be hoisted onto the vessel and stowed there, when a pallet load of drums, then in the process of being moved from the dock to the No. 1 hold, fell onto the pier injuring plaintiff.

The original complaint filed by plaintiff was solely against Export, in which plaintiff alleged that his injuries were caused by faulty winches supplied by Export and the negligence of Export's employees. By appropriate proceedings, Export caused the United States of America and Whitehall to be named as third-party defendants. The United States, in turn, filed a cross-claim against Whitehall. The third party actions and

cross-claim seek a judgment and recovery over in each instance upon the theory of indemnity. An amended complaint later brought Whitehall in as a co-defendant to plaintiff's action.

■ Subsequent to the date of the accident and prior to the institution of any action, plaintiff and Whitehall's compensation insurance carrier executed a memorandum of agreement as to payment of compensation pursuant to the Virginia Workmen's Compensation Act, Code 1950, § 65–1 et seq. Suit was commenced against Export three days later. Approximately three weeks thereafter the Industrial Commission of Virginia entered an award in favor of plaintiff, as an employee of Whitehall, in accordance with the Workmen's Compensation Act. Plaintiff has received and accepted weekly payments under the award of July 16, 1956, beginning June 16, 1956.

Export and Whitehall filed motions for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C., directed to the amended complaint. Whitehall, as the employer of plaintiff, relies upon the specific provisions of the Virginia Workmen's Compensation Act, but plaintiff urges that the payments made thereunder do not constitute a bar to an action against his employer because of the Extension of Admiralty Act, 46 U.S.C.A. § 740, which reads in part as follows:

"The admiralty and maritime jurisdiction of the United States shall extend to and include all causes of damage or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land.

"In any such case suit may be brought in rem or in personam according to the principles of law and the rules of practice obtaining in cases where the injury or damage has been done and consummated on navigable water  *  *  *."

Export, contending that the Virginia Workmen's Compensation Act is applicable, insists that the work being done at the time of the accident was a part of Export's "trade, business or occupation", and, since Export was not a stranger to the employment and work, plaintiff's acceptance of compensation under the Act from Whitehall's insurance carrier is a bar to any action against Export. Stated otherwise, was Export an "other party" within the meaning of the Code of Virginia, 1950, § 65–38, read in connection with other provisions of the Act? [1]

1. The pertinent provisions of the Virginia Workmen's Compensation Act are as follows:

§ 65–99 — "Every employer subject to the compensation provisions of this Act shall insure the payment of compensation to his employees in the manner hereinafter provided. While such insurance remains in force he or those conducting his business shall only be liable to an employee for personal injury or death by accident to the extent and in the manner herein specified."

§ 65–37 — "The rights and remedies herein granted to an employee when he and his employer have accepted the provisions of this Act respectively to pay and accept compensation on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, parents, dependents or next of kin, at common law or otherwise, on account of such injury."

§ 65–38 — "The making of a lawful claims against an employer for compensation under the Act for the injury or death of his employee shall operate as an assignment to the employer of any right to recover damages which the injured employee or his personal representative or other person may have against any other party for such injury or death, and such employer shall be subrogated to any such right and may enforce in his own name or in the name of the injured employee or his personal representative, the legal liability of such other party.  *  *  *"

§ 65–108 — "(This provides for insurance carrier of employer to be subrogated to the rights and duties of the employer, but grants such carrier no further rights.)"

§ 65–5 — "Nothing in this Act contained shall be construed to make, for the purposes of this Act, the employees of an independent contractor the em-

■ Upon consideration of the argument of counsel, the Court granted Whitehall's motion for summary judgment directed to the amended complaint, but such action, of course, did not exonerate Whitehall as a third-party defendant in the third-party action instituted by Export or on the cross-claim filed by the United States of America. It was the conclusion of the Court that the Extension in Admiralty Act enacted by Congress on June 19, 1948, 46 U.S.C.A. § 740, was not intended to overrule the prior decisions of the United States Supreme Court in State Industrial Commission of State of New York v. Nordenholt Corp., 259 U.S. 263, 42 S.Ct. 473, 66 L.Ed. 933; Smith & Son, Inc., v. Taylor, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520, and Swanson v. Marra Bros., 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045. While a strict interpretation of the wording of the Act would appear, at first glance, to extend the admiralty jurisdiction to the factual situation presented herein, the legislative history indicates that the Act was not intended to affect remedies which may exist against other parties involved by existing law in any appropriate forum.[2] Particularly is this true when we consider the possible application of the Act to fields heretofore preempted by state compensation acts in which the dock or pier has been held to be an extension of the land. Congress, in passing the Longshoremen's and Harbor Workers' Compensation Act in 1927, 33 U.S.C.A. § 901 et seq., declared its purpose to restrict the liability under federal statutes of an employer of longshoremen "to injuries to his employees occurring on navigable waters". Swanson v. Marra Bros., supra, 328 U.S. at pages 5, 6, 7, 66 S.Ct. at page 871. To oust state compensation acts from an established and important area of coverage by reason of the passage of the Extension in Admiralty Act, which makes no reference to the field of compensation law, would create a situation in which a longshoreman, such as the plaintiff herein, would not be covered by any workmen's compensation act, state or federal, as the federal act covers only those injuries occurring "upon the

ployees of the person or corporations employing or contracting with such independent contractor."

§ 65–26 — "When any person (in this section and §§ 65–28 and 65–29 referred to as 'owner') undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (in this section and §§ 65–28 to 65–31 referred to as 'sub-contractor') for the execution or performance by or under such sub-contractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if the workman had been immediately employed by him."

§ 65–27 — "When any person (in this and the four succeeding sections referred to as 'contractor') contracts to perform or execute any work for another person which work or undertaking is not a part of the trade, business or occupation of such other person and contracts with any other person (in this section and §§ 65–28, 65–29, 65–30 and 65–31, referred to as 'sub-contractor') for the execution or performance by or under the sub-contractor of the whole or any part of the work undertaken by such contractor, then the contractor shall be liable to pay to any workman employed in the work any compensation under this Act which he would have been liable to pay if that workman had been immediately employed by him."

§ 65–28 — "When the sub-contractor in turn contracts with still another person (in this section and §§ 65–29, 65–30 and 65–31 also referred to as 'sub-contractor') for the performance or execution by or under such last sub-contractor of the whole or any part of the work undertaken by the first sub-contractor, then the liability of the owner or contractor shall be the same as the liability imposed by the two preceding sections."

2. Senate Report No. 1593, 80th Cong. 2d Sess., in speaking of the Extention in Admiralty Act, has this to say:

"The legislation is not intended to affect existing rights of seamen against their vessels or against private companies who operate Government-owned vessels, or to affect remedies which may exist against other parties involved by existing law in any appropriate forum." U.S.Code Cong.Service 1948, p. 1899.

navigable waters", 33 U.S.C.A. § 903(a), and it is established that injuries suffered on piers or docks (as opposed to drydocks) are not included. It can hardly be said that the Extension in Admiralty Act was also intended to amend the federal compensation act to include injuries occurring on land as well as "upon the navigable waters", and this is especially true when the Supreme Court has said, "Congress made clear its purpose to permit state compensation protection wherever possible". Davis v. Department of Labor and Industries, 317 U.S. 249, 252, 63 S.Ct. 225, 227, 87 L.Ed. 246. See also United States Casualty Co. v. Taylor, 4 Cir., 64 F.2d 521, 524; Travelers Ins. Co. v. McManigal, 4 Cir., 139 F.2d 949, 951; both opinions by Judge Soper. cf. Gladden v. Stockard S. S. Co., 3 Cir., 184 F.2d 510.

The motion for summary judgment filed by Export presents an entirely different principle of law. As plaintiff has received and accepted compensation under the Virginia Workmen's Compensation Act from the compensation insurance carrier of Whitehall, pursuant to an award, there exists no rights in behalf of plaintiff against Whitehall. Export argues strenuously that the work being done at the time of the accident was a part of Export's "trade, business or occupation", and that Export was not a stranger to the employment and work— hence Export is entitled to the same protection from action as may inure to Whitehall. The issue involves an interpretation of the laws of Virginia. An examination of the authorities reveals no clear-cut rule on the subject. The recent case of Kramer v. Kramer, 199 Va. 409, 100 S.E.2d 37, discusses at length the numerous decisions, upon consideration of which this Court reached the conclusion that, for the purposes of summary judgment, doubt existed as to whether the loading of the vessel constituted a part of "the trade, business or occupation" of Export. In denying Export's motion for summary judgment, the Court reserved the right to receive and consider evidence on the question at the time of

trial before the jury. At the trial no such evidence was presented and no request for charge on this issue was made.

■ Whitehall filed a motion to dismiss the third-party complaint of Export contending that the payment of compensation to the plaintiff barred the rights of Export as third-party plaintiff. This motion was denied under the authority of Ryan Stevedoring Co. v. Pan-Atlantic Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. While not raised by Whitehall's motion, it may be argued that Export's third-party action against Whitehall should be dismissed because of the absence of any indemnity or service agreement between Whitehall and Export, as Export contracted with M.S.T.S. who, in turn, contracted with Whitehall. This is the point expressly avoided by the Supreme Court in Ryan (footnote 6).

■ The United States likewise filed a motion to dismiss the third-party complaint of Export alleging, in substance, that the Court lacks jurisdiction as the cause of action could be maintained under the Suits in Admiralty Act, 41 Stat. 525, 46 U.S.C.A. § 741 et seq., and that, pursuant to the provisions of 28 U.S.C. 2680(d), sole and exclusive jurisdiction is vested in admiralty and, in any event, the action does not lie under the Tort Claims Act, 63 Stat. 101, 28 U.S.C. § 1346(b). While the third-party complaint may sound primarily in tort, the point was never pressed by Export and counsel agreed that any recovery over must rest upon the theory of indemnity. The Court invited an amendment but counsel appeared to be willing to accept the third-party complaint in the nature of a contractual right of action. If such an amendment is necessary, it will be granted by this Court at any time prior to the entry of the final judgment order.

■■ The point raised by the Government's motion to dismiss is not free from doubt. The Court deferred action pending the trial on the merits, at which time the issue of liability of the United States as a third-party was heard by

the Court without the intervention of the jury, which, as will be hereinafter noted, passed upon the primary question of Export's liability to plaintiff and served as an advisory jury in answering certain inquiries with respect to the possible liability of Whitehall. It is, of course, fundamental that the United States cannot be sued as an alleged joint tortfeasor or as an indemnitor without express statutory consent. United States v. Sherwood, 312 U.S. 584, 61 S. Ct. 767, 85 L.Ed. 1058; Eastern Transportation Company v. United States, 272 U.S. 675, 686, 47 S.Ct. 289, 71 L.Ed. 472. Admittedly an action would lie against the United States under the Suits in Admiralty Act, but the courts have universally held that where an action may be brought in admiralty, the grant of jurisdiction is exclusive. Brady v. Roosevelt S. S. Co., 317 U.S. 575, 63 S.Ct. 425, 87 L.Ed. 471, rehearing denied 318 U.S. 799, 63 S.Ct. 659, 87 L.Ed. 1163; Matson Navigation Co. v. United States, 284 U.S. 352, 52 S.Ct. 162, 76 L.Ed. 336; Johnson v. U. S. Shipping Board Emergency Fleet Corporation, 280 U.S. 320, 50 S.Ct. 118, 74 L.Ed. 451. The United States contends that the third-party complaint under Rule 14 of the Federal Rules of Civil Procedure cannot be treated as an impleading petition under General Admiralty Rule 56, 28 U.S.C.; nor can it be transferred to the admiralty court. In support of this argument will be found Mangone v. Moore-McCormack Lines, Inc., D.C., 152 F.Supp. 848, Dell v. American Export Lines, D.C., 142 F.Supp. 511, and Durant v. Coastwise Line, 1957 A.M. C. 581. Without more, this Court would be inclined to grant the motion to dismiss, but there is a decided conflict of authority on the question and in the following cases it was expressly held that a third-party complaint could be treated as an impleading petition and, as to such third-party action, transferred to the admiralty court. Canale v. American Export Lines, Inc., D.C., 17 F.R.D. 269, 271–273; 1956 A.M.C. 1344, 1350; Skupski v. Western Nav. Corp., D.C.,

113 F.Supp. 726, 1953 A.M.C. 1441; Dupuis v. Drytrans, Inc., D.C., 150 F.Supp. 436, 1957 A.M.C. 1290; Pilato v. States Marine Corp., D.C., 158 F.Supp. 221, 1957 A.M.C. 2446; Hidick v. Orion Shipping & Trading Co., D.C., 152 F.Supp. 630, 1957 A.M.C. 2443. The matter is considered at length in Orion Shipping & Trading Co. v. U. S., 9 Cir., 247 F.2d 755, 1957 A.M.C. 2236, in which the Ninth Circuit discusses the strict rule of construction set forth in Johnson v. U. S. Shipping Board Emergency Fleet Corporation, supra, and the liberal construction of the power granted to suitors against the United States in United States v. Yellow Cab Co., 340 U.S. 543, 71 S.Ct. 399, 95 L.Ed. 523. It is suggested that the trend is directed to a liberal construction as reflected in Moore-McCormack Lines v. McMahon, 2 Cir., 235 F.2d 142, 143, and British Transport Commission v. United States, 354 U.S. 129, 77 S.Ct. 1103, 1 L.Ed.2d 1234, affirming 4 Cir., 230 F.2d 139. In the absence of a controlling decision from the Supreme Court or this Circuit, the motion to dismiss is denied. In the light of the Supreme Court cases of Ryan Stevedoring Co. v. Pan-Atlantic Corp., supra, and Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed. 491, it is inconceivable that the United States, in its capacity as the largest shipper and shipowner in the world, may successfully avoid the possibility of third-party liability by asserting the apparent conflict of rules and the technicalities of transfer of causes of action from law to admiralty. To hold otherwise will increase the congestion of court dockets by requiring the trial of the civil action and thereafter hearing substantially the same set of facts in admiralty. In the interest of expediting the litigation the United States should not be heard to complain when the action against the sovereign is heard without the intervention of a jury. British Transport Commission v. United States, supra, 354 U.S. at page 140, 77 S.Ct. at page 1109. Again it should be

noted that counsel do not raise the technicalities as to the form of the third-party complaint as contrasted with the form of an impleading petition in admiralty. If the Court is incorrect in this assumption, counsel are invited to amend their pleadings to conform.

This brings us to a consideration of the trial of the case on its merits. The facts not hereinabove recited reveal that a faulty "up and down" winch supplied and rigged by Export, through the negligence on the part of Export's employees, proximately caused the accident and resulting injuries to plaintiff who was free of contributory negligence. The evidence supports the finding that the winch caused the pallet of cargo to drop after it had already been hoisted to a place approximately three feet above the deck by the Burton boom. The falling cargo struck the deck rail with some going overboard and the remainder falling on the dock. One of the 111-pound drums or containers commenced rolling and struck the plaintiff. The evidence is sufficient to sustain the jury verdict to the effect that the vessel Executor or its equipment was unseaworthy, and that there existed negligence on the part of Export, its officers or employees, both of which constituted a proximate cause of the accident. The general verdict in favor of the plaintiff against Export in the sum of $37,500 is approved. The jury was, in the opinion of the Court, properly instructed on the issues of unseaworthiness and negligence.[3] The matter of excessive damages does not warrant any discussion.

The evidence further shows that, prior to the use of the defective winch, Whitehall had knowledge of its faulty condition but nevertheless permitted its longshoremen to operate same. Counsel for Export submit that the negligence, if any,

of Export was "passive" or "secondary", whereas the negligence of Whitehall was "active" or "primary". In the light of Weyerhaeuser Steamship Co. v. Nacirema Operating Co., supra, these contentions become inappropriate, but as this case was tried prior to the decision in Weyerhaeuser the question of the percentage of Whitehall's negligence to the accident was submitted to the jury with a finding that 55% was attributable to Whitehall. If it became necessary to so decide, the Court would not find that the negligence of Export was "passive" or "secondary".

We approach, therefore, the Ryan and Weyerhaeuser cases and their applicability, if any, to the instant proceeding. The contract between Export and M.S.T.S. (United States of America), as amended June 22, 1951, makes no specific provision for indemnity. Under Article 5 it is stated that "the loading and discharging of cargo will be performed or arranged for by the Government" and "the cargo shall be efficiently loaded in the vessel". The Government agreed to "bear all expenses of loading, stowing and discharging the cargo, such as lighterage * * * stevedoring, * * winchmen", etc. The contract further states that "for the performance of the stevedoring functions assumed by the Government hereunder the Government shall have the use of a sufficient number of the vessel's winches and other appropriate gear and equipment actually on board". Export agreed that the winches would be "fully operable" and the gear "properly rigged".

While it is manifest that the United States is not responsible for the negligence of an independent contractor such as Whitehall, there would seem to be an implied contractual agreement between Export and the United States

---

3. Export insists that there is no authority extending the doctrine of seaworthiness to a longshoreman working on a dock who has not previously been working aboard the vessel. This contention appears to be a distinction without a difference when counsel agree that the doctrine would apply to a longshoreman working on a dock who had previously been on the vessel during loading operations. Hagans v. Farrell Lines, Inc., 3 Cir., 237 F.2d 477.

wherein the United States agreed to provide the stevedoring services to such extent as they would be performed "with reasonable safety". This is the import of Weyerhaeuser which disclaims the necessity of an express indemnity clause. Indeed, the United States, in its brief, makes such a concession wherein it is said:

> "The relations of the parties in the case at hand differ from Weyerhaeuser and Ryan only insofar as there are two contracts and a second intervening third-party defendant, the United States. The duty of the professional expert to reimburse and indemnify its customer continues identical. The contractual relationship of the parties is merely twofold: First, we have the contract of carriage between American Export Lines and the United States, wherein the United States assumed the responsibility of safely loading the vessel. Under this contract, American Export Lines has the right to seek indemnification or reimbursement from the United States for Whitehall's breach of the duty of expert professional performance; this we cannot dispute. Secondly, we have the contract between the United States and Whitehall Terminals, Inc., under which the skilled professional, Whitehall, undertook the complete performance, control, and supervision of the loading operations on behalf of its customer, the United States. The United States can hardly be charged with breach of any contract obligation to Whitehall. Consequently, the United States has the right under this contract to reimbursement from Whitehall for any damages it has to pay American Export as a result of Whitehall's breach of its contractual duty to conduct the loading operations in a safe and workmanlike manner."

■ In the present case Whitehall, the expert stevedore, knew of the existing danger a few hours prior to the accident but continued to permit the use of the defective equipment. The expert stevedore was in charge of operations and "the master had no duty or right of supervision as to instrumentalities adopted and methods used". Cornec v. Baltimore & Ohio R. R. Co., 4 Cir., 48 F.2d 497, 502 (cited with approval in Weyerhaeuser). The expert's contractual obligation to perform its duties with reasonable safety related not only to the handling of the cargo, as in Ryan, but also to the use of equipment incidental thereto. Weyerhaeuser Steamship Co. v. Nacirema Operating Co., supra. The expansion of this doctrine apparently places a duty upon the expert, not merely to call dangers to the attention of the ship's officers, but also to stop all operations as soon as it should have realized that it was unsafe to proceed without the danger being corrected. United States v. Arrow Stevedoring Co., 9 Cir., 175 F.2d 329 (cited with approval in Weyerhaeuser).

In Cornec it is said that "the stevedoring company owes to the vessel and her owners the duty of using due care in the loading; but the vessel and her owners owe no such duty to the stevedoring company". This tends to explain the perplexities of the problem as the obligation of the vessel and its owners to an injured third party is grounded upon entirely different principles of unseaworthiness and negligence. The breach of the contractual duty to use due care may flow from negligence on the part of the stevedore-expert but Weyerhaeuser clearly establishes that the claim of the shipowner, as customer, against its expert stevedoring contractor does not sound in tort but is exclusively *ex contractu* for breach of warranty, express or implied, of expert professional performance. This unique theory does away with the concept of joint tortfeasorship and such approaches as "active" or "passive" negligence in matters affecting contractual indemnity. The expert stevedore is now obligated to re-

imburse and indemnify its customer for all foreseeable damages which the customer may sustain as a result of the expert's breach by substandard professional performance, and this is so even though the customer is guilty of negligence or has violated its warranty of seaworthiness to the end that the customer is held liable to a third party.

Whitehall relies upon Hagans v. Farrell Lines, Inc., 3 Cir., 237 F.2d 477, in support of its theory that indemnity over will not lie. To fully understand the impact of the Weyerhaeuser decision, the Court has examined the record and briefs filed in the Supreme Court. The United States filed a brief as *amicus curiae*. It is obvious that Justice Clark, in writing the unanimous opinion of the Court, substantially adopted the view advanced by the Government. While Hagans is not mentioned in the opinion, it is argued in the briefs and the Government suggests that in Hagans, as well as in Amerocean S. S. Co. v. Copp, 9 Cir., 245 F.2d 291, and United States v. Harrison, 9 Cir., 245 F.2d 911, there have been difficulties in applying the teachings in Ryan. The indemnity feature in Hagans appears to have been discarded.

Liability to a third party is one of the foreseeable damages resulting from a breach of contract by the expert stevedore. The promisee is entitled to be reimbursed for this liability, even in the absence of an express indemnity agreement. However, in this case, as between the United States and Whitehall, we have an express agreement under Clause 12 (a) (2) wherein it is specified that Whitehall "shall be responsible for and shall hold the Government harmless for any and all loss, damage, liability and expense for * * * bodily injury to or death of persons occasioned either in whole or in part by the negligence or fault of the Contractor (Whitehall), his officers, agents or employees in the performance of work under this contract". There is an express limitation to the foregoing agreement which, in the opinion of the Court, is not applicable to this case.

The liability of the stevedoring contractor, based upon the breach of the contractual duty owed by it to the customer, is not defeated by circumstances indicating that the shipowner may have been negligent in the duty it, in turn, owed to the injured plaintiff longshoreman, or in failing to maintain its warranty of seaworthiness. The vessel or customer owes no duty to the expert stevedore which is not provided by contract, but the expert owes the duty to use proper care in the loading or unloading process. The only defenses open to the expert are those which would excuse a breach of its contract with its customer. This doctrine, while seemingly strange in its application, permits the granting of full contractual indemnity for damages occasioned by the breach thereof, even though the party seeking indemnity has, by its actions, partially contributed to the immediate damages to a third party.

This leaves for consideration the question of the right of Export to be indemnified in its action against Whitehall. We do not reach this point as we have heretofore found that there existed an implied contract of indemnity between the United States and Export, as well as an express service agreement between Whitehall and the United States. Assuming arguendo the absence of an implied contract of indemnification between Export and the United States, could Export recover over against Whitehall on an implied contract where Export and Whitehall did not negotiate at all, and where privity appears to be lacking? As previously suggested, this is the point raised but avoided in Ryan. Indeed, there is much to say in argument of an implied contract between the shipowner and any expert stevedore performing duties on board the vessel, with knowledge on the part of the shipowner of the performance of such services, that the expert's duties will be performed with reasonable safety.

It is quite true that the jury was not fully instructed as to the contractual indemnity liability of Whitehall. Requests for charges on this point were limited to directing a verdict. However, the issue of the construction of any contract is one for the court and the jury having determined that Whitehall was guilty of negligence which proximately contributed to plaintiff's injuries, it follows that Whitehall's negligence of necessity constituted a breach of its express contractual obligation with the United States, and perhaps of an implied contract with Export.

The interesting legal problems presented by the factual situation herein will undoubtedly receive the attention of at least one appellate court. The conclusion of the Court is that plaintiff is entitled to a judgment against Export for the amount of the verdict, plus interest from the date of said verdict, subject to a credit of the amount heretofore received by plaintiff by way of compensation benefits, which latter sum shall be in the form of a judgment in the plaintiff's favor for the use and benefit of Whitehall or its insurance carrier; that upon the payment of said judgment or the giving of a supersedeas bond to respond for same, Export shall be entitled to a decree over against the United States of America for the full amount of plaintiff's judgments against Export by way of indemnity; that the United States of America shall, in turn, be entitled to a decree over against Whitehall for the full amount for which the United States of America shall be called upon to indemnify Export. Plaintiff shall recover his costs against Export which, under the indemnity theory as advanced in Ryan and Weyerhaeuser, shall be passed on to the successive parties. Counsel for plaintiff will prepare a judgment order and decree in accordance with this memorandum which is adopted by the Court as its findings of fact and conclusions of law and, after presentation to opposing counsel for inspection and endorsement, the same shall be presented to the Court for entry.