**KONINKLYKE NEDERLANDSCHE STOOMBOOT MAALSCHAPPY, N. V.,**
**ROYAL NETHERLANDS STEAMSHIP COMPANY, Appellant,**

v.

**STRACHAN SHIPPING CO., Appellee.**

**No. 19181.**

United States Court of Appeals Fifth Circuit.

March 30, 1962.

Clarence S. Eastham, Houston, Tex., William M. Kimball, Burlingham, Hupper & Kennedy, New York City, Eastham, Watson, Dale & Forney, Houston, Tex., for appellant.

Henry D. Akin, Dallas, Tex., E. D. Vickery, Houston, Tex., for appellee, Royston, Rayzor & Cook, Houston, Tex., Leachman, Gardere, Akin & Porter, Dallas, Tex., of counsel.

Before RIVES, CAMERON and GEWIN, Circuit Judges.

RIVES, Circuit Judge.

The court below dismissed Royal's third-party complaint against Strachan, and Royal appeals. Rawlinson, a longshoreman employed by Strachan, sued Royal for injuries sustained while on a

Houston dock helping to load a ship owned by Royal. The accident occurred when Rawlinson was caught between a piece of pipe being loaded and the side of the ship. Since the injuries occurred while Rawlinson was on the dock and not on navigable waters, he pursued to settlement an action under the Workmen's Compensation Act of Texas. Rawlinson then sued Royal in the state court claiming that his injuries were caused by negligence and by unseaworthiness of the vessel. By removal the case came to the federal court. Royal then filed a third-party complaint against Strachan asking for an indemnity for any recovery obtained by Rawlinson on the ground that Strachan had breached its implied contractual warranty to perform services in a workmanlike fashion. Royal settled the suit with Rawlinson. Strachan then moved for summary judgment on the third-party claim on the ground that Strachan's payments to Rawlinson in compliance with the Texas Workmen's Compensation Act barred Royal's third-party action. The district court agreed with Strachan and entered judgment dismissing the third-party complaint.

The issues presented are purely ones of law and may be stated: (1) Can a state compensation statute cut off an action by a shipowner against a stevedoring company for breach of a maritime contractual warranty to perform services in a workmanlike fashion, and/or (2) have the Texas courts so construed the exclusive remedy clause of the Texas act?

 There can be little question that the stevedoring contract is a maritime contract and that breach of an implied warranty to perform services in a workmanlike fashion is governed by federal maritime law. In general, the fact that a contract is maritime is not dispositive of the law to be applied. In the absence of a federal statute, a judicially-fashioned federal rule, or a need for uniformity throughout admiralty jurisdiction relevant state law may be applied. Wilburn Boat Co. v. Fireman's Fund Ins. Co., 1955, 348 U.S. 310, 75 S.Ct. 368,

99 L.Ed. 337. As the Court there framed the issue in a case of first impression with respect to maritime insurance contracts.

"* * * in the absence of controlling Acts of Congress this Court has fashioned a large part of the existing rules that govern admiralty. And States can no more override such judicial rules validly fashioned than they can override Acts of Congress. See, e. g., Garrett v. Moore-McCormack Co., 317 U.S. 239, 63 S.Ct. 246, 87 L.Ed. 239. Consequently the crucial questions in this case narrow down to these: (1) Is there a judicially established federal admiralty rule governing these warranties? (2) If not, should we fashion one?" 348 U.S. at 314, 75 S.Ct. at 370.

While the Court there held that maritime insurance contracts should be governed by state law, there can be no doubt that a clearly established federal judicially-fashioned maritime rule governs a stevedore's breach of warranty to perform services in a workmanlike fashion. In a series of recent cases, the Supreme Court has held that where a shipowner is damaged by a personal injury recovery against it, which damage was occasioned by the negligence of the stevedore in the performance of his contractual undertakings, then a contract action for breach of warranty will lie against the stevedore. See Ryan Stevedoring Co. v. Pan Atlantic S. S. Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133; Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 78 S.Ct. 438, 2 L.Ed.2d 491; Crumady v. The Joachim Hendrik Fisser, 1959, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413. The action is not a derivative one from the basis of the suit by the injured party against the shipowner, but is based purely on damage resulting from a breach of contract. Once it is held that a personal injury judgment is damage recoverable in such a contract action, this judgment has the exact same status as, for example, damage resulting from injury to the ship it-

self. The question then is whether it arose as the result of the stevedore's breach of warranty and whether any conduct on the part of the shipowner would bar recovery. We do not see the relevance of the position of the injured party or his personal alternative remedies under state or federal compensation acts. The court below attached weight to the fact that the Supreme Court in Ryan first made the determination of whether the federal Longshoremen's Act permitted recovery for a breach of warranty. From this it argued that a similar determination must be made with respect to an applicable state compensation act. This by no means follows. Federal statutes, if constitutional, are paramount to any judicially-fashioned rules of admiralty; state laws are not. See Wilburn Boat, supra. Thus while a Congressional direction denying the contract recovery would be decisive, a state rule would not.

Strachan relies upon our recent decision in Kent v. Shell Oil Co., 5 Cir., 1961, 286 F.2d 746, as holding that a state workmen's compensation act can control all the rights and remedies of the parties involved in this action. There a truck driver was injured while unloading pipe from his truck onto a barge moored on the shore of the Mississippi. The driver received compensation under the Louisiana compensation act and then tried to sue the barge owner on a tort and unseaworthiness theory of recovery. One of the grounds given by the court for denying recovery was that the state compensation act barred the injured party from suing a third party if the work being performed was part of the usual trade or business of such third party. The court relied upon Swanson v. Marra Bros., 1946, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045, for the proposition that Congress had left the determination of all rights, duties and remedies for nonmaritime land-based injuries to local law. Assuming that, on the authority of Swanson, local law also controls land-based injuries sustained while working in direct relation to maritime matters, it

by no means follows that either Swanson or Kent is authority for the proposition that local law can control the rights of Royal on its maritime contract with Strachan. The question in both Swanson and Kent was the existence of a right of action in an injured employee. In both cases it was held that since Congress had expressly reserved to the states the right to provide compensation within the limits of state jurisdiction (i. e., to all injuries which did not take place on navigable waters), Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 903, the injured party's rights and remedies may be controlled by local law. Kent therefore held that Louisiana could bar the injured employee's right of action against a third party. Section 903 cannot be extended, however, to allow Texas to control the independent rights of Royal on its contract with Strachan once it has permitted the employee to sue. Nothing in the section can be read to give the state control over the rights and remedies of the shipowner. We are therefore of the opinion that Kent has no bearing on Royal's contractual rights.

█ Since we find no federal constitutional, statutory or other rule contrary to the federal rule fashioned in Ryan, supra, we conclude that Royal's contractual rights against Strachan are not affected by the state rules governing the injured party's compensation rights and remedies. The holding in Ryan was not based on such marginal grounds that state law to the contrary would upset its rationale and require a decision in favor of Strachan. We note that under the rationale of Wilburn Boat, supra, a federal rule is only established when the Court is of the opinion that there is a substantial need for a uniform admiralty rule—a result not consistent with the appellee's position here. We also note that Ryan was decided in the context of the unusual admiralty rule that an injured longshoreman can recover against the shipowner without a showing of the shipowner's negligence—i. e., for unseaworthiness—a possibility not contemplated by the Texas exclusive remedy

clause. In the context of the normal industrial accident covered by state workman's compensation, the only ground for a common-law action against a third party is upon a showing of that party's negligence. Under such circumstances, we are of the opinion that Ryan remains applicable and that the lower court was in error when it dismissed Royal's third-party complaint.

Several other Circuits have held that, as a general proposition, stevedoring and repair service contracts with a shipowner are maritime contracts and that breach of a warranty to perform services in a workmanlike fashion is governed by federal, not state, law. See, e. g., Booth Steamship Co. v. Meier & Oelhaf Co., 2 Cir., 1958, 262 F.2d 310, 312–13; A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., 2 Cir., 1958, 256 F.2d 227, 230. In both cases, however, the injuries were incurred on the ship, and the court was therefore not faced with the distinction the appellee makes here. In American Export Lines, Inc. v. Revel, 4 Cir., 1959, 266 F.2d 82, affirming, 162 F.Supp. 279 (E.D.Va., 1958), the court was faced with the issue of a stevedoring contract indemnity for an accident which took place on the Norfolk docks. While the third-party defendant raised the issue of the indemnity being barred by the Virginia Workmen's Compensation Act, the district court dismissed their contention with a peremptory citation to Ryan, 162 F.Supp. at 284, and the Court of Appeals considered Ryan and the subsequent Supreme Court cases cited, supra, as controlling without even discussing the possible effect of state law. As the Court there said: "We find in this record no basis for a legally significant distinction from Crum-

ady [v. The J[oachin] H[endrik] Fisser, 358 U.S. 423 [79 S.Ct. 445, 3 L.Ed.2d 413] (1959)] * * *" 266 F.2d at 87. While the appellee argues that no Virginia court had considered the issue of a contract indemnity being barred by the Virginia Workmen's Compensation Act such that the present conflict between state and federal law was not squarely presented, the possibility of such a conflict was argued by the parties and summarily dismissed by the Court for the identical reasons we have adopted here.

But even assuming Texas could affect Royal's contractual rights, our decision would be the same since Texas has not construed its compensation act to bar Royal's *contract* indemnity. The language of the exclusive remedy clause in the Texas Workmen's Compensation Act, Vernon's Ann.Civ.Stat., Art. 8306,[1] does not on its face bar Royal's contract action. Very similar language in the federal Longshoremen's Act[2] was construed not to bar such an action in Ryan. We are therefore faced with the question of what construction the Texas courts have, or are likely to, put on this article. Strachan and the court below rely on two Texas cases to support their position. A reading of these cases, however, indicates that the issue was neither raised nor considered. The earliest case is West Texas Utilities Co. v. Renner, 32 S.W.2d 264 (Tex.Civ.App.1930), aff'd 53 S.W.2d 451 (Com.App.1932), which involved the employee of an independent contractor who was injured by high voltage wires on the premises of the defendant. As the court there said, the independent contractor "was impleaded by the defendant below as a joint wrongdoer and joint tortfeasor, and judgment

---

1. Art. 8306, Sec. 3, Vernon's Ann.Civ. Stat.:
 "The employés of a subscriber and the parents of minor employés shall have no right to action against their employer * * * for damages for personal injuries * * * but such employés and their representatives and beneficiaries shall look for compensation solely to the association [workmen's compensation in-

surance carrier], as the same is hereinafter provided for."

2. The Longshoremen's and Harbor Workers' Compensation Act, Section 5 (33 U.S.C.A. § 905), says: "The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee * * *."

over sought against it * * * " 53 S.W. 2d at 453. It then held that the lower court was correct in saying that the independent contractor

" * * * was not charged by the pleading or shown by the evidence to have been guilty of any active negligence, and, having protected itself by providing compensation insurance for its employees, could not be compelled to pay indirectly when no liability exists to pay directly." 53 S.W.2d at 456.

The issue of a contractual warranty was not raised and the court did not reach or pass on the possible distinction. Nor is there any indication that such a warranty exists under Texas law. The second case is even less in point. In Westfall v. Lorenzo Gin Co., 287 S.W.2d 551 (Tex.Civ.App.1956), the driver of one truck in a collision collected from the owner of the other; the defendant-owner then tried to bring in the plaintiff's employer on the ground that it had been guilty of gross negligence and therefore was subject to a common-law indemnity. First, there was no contractual relation between the parties to the impleader. Second, there was never any proof of gross negligence. And, finally, the court said:

"Since the gin company was a subscriber under the Workmen's Compensation Law, appellants certainly could not obtain judgment over against it for contribution or indemnity without allegation and proof of some act constituting gross negligence." 287 S.W.2d at 554.

Far from indicating that no indemnity of any type will ever be allowed, this language indicates that Texas is as yet unwilling to rule out an indemnity where there is a showing of gross negligence on the part of the injured man's employer, and it might even be read to imply that such an indemnity is not barred by article 8306. The appellee also cites McCormick v. United States, S.D.Tex., 1955, 134 F.Supp. 243, in support of its position. It should first be noted that that court's interpretation of state law is no more binding on this Court than that of the court below. On the merits, the court in McCormick found that the third-party action was not covered by the express contractual indemnity agreement between the parties, and that the common-law tort indemnity allegation was invalid on the authority of Renner. Again the issue of an implied contractual warranty was not raised, the action was not a maritime action, and the express indemnity agreement may have waived any possible implied one. The slender thread, then, upon which Strachan relies to cut off the well-settled maritime rights of Royal is a free-wheeling extrapolation of the language in Renner that the employer "could not be compelled to pay indirectly when no liability exist[ed] to pay directly."

We cannot go along. The very basis of the contract distinction in Ryan is that it is an independent right of action not based upon or related to the injured party's theory of recovery. When the shipowner has attempted to follow the indirect tort route, the federal courts have been as quick to strike it down as the Texas court was in Renner. See American Mut. Liability Ins. Co. v. Matthews, 2 Cir., 1950, 182 F.2d 322; Brown v. American-Hawaiian SS Co., 3 Cir., 1954, 211 F.2d 16. Further, we note that the later Texas court in Westfall, supra, did not consider the Renner language dispositive when faced with a different theory of indemnity, one based on gross negligence. We feel that it would be even less dispositive when the suit is based on contract. In the absence of an express holding barring Royal's contract claim, we see no reason for disturbing the rule laid down in Ryan.

We held in Kent, supra, that a state compensation act can bar an injured employee from suing a third party. If, however, such a suit is permitted, and is pursued to final settlement, a state compensation act cannot prevent an action against the employer by the third party based on a federal judicially-establshed maritime contractual warranty. Moreover, the Texas Compensation Act does

not in terms, or as construed by the Texas courts, attempt so to do. The judgment of the district court is therefore

Reversed.

CAMERON, Circuit Judge (dissenting).

The court below says in its decision which the majority opinion reverses:

"In Ryan and progeny the accidents or injuries were aboard ship and the federal compensation act applied. Here the injury was sustained on a dock. * * * I do not believe the Supreme Court held in Ryan and related cases that Congress, in passing the federal compensation act to fill a gap in compensation coverage, intended at the same time to limit valid state compensation coverage in any manner. As I understand Ryan, there is an implied contract to stevedore properly, the breach of which is actionable if, and only if, the applicable compensation act does not prevent it. True, the Court's thinking as to *why* the federal act does not bar recovery could be applied as well to the Texas act with the same result, but Texas courts have not chosen to follow this thinking. Apparently convinced legislative policy so compels, Texas courts hold compliance by employer with the Texas Compensation Act terminates all liability of employer arising out of covered injuries to employees. West Texas Utilities v. Renner, 32 S.W. 264 (Ct.Civ.Apps.1930), 53 S.W.2d 451 (Com.Apps.1932); Westfall v. Lorenzo Gin Company, 287 S.W.2d 551 (Ct.Civ.Apps.1956, no writ history); McCormick v. United States, 134 F.Supp. 243 (S.D.Tex.1955).

"In short I believe that when the federal law filled a gap in workmen's compensation coverage and allowed indemnity recovery it did not oust state law where validity in force; neither did it limit the force of this valid state law in any manner. States differ as to allowance of indemnity actions but Texas says no."

On the basis of this statement, which I believe is an accurate statement of the law of Texas and which we, sitting as a Texas court, ought, I think, to follow; and of our recent decision in Kent v. Shell Oil Co., 5 Cir., 286 F.2d 746 (1961), I respectfully dissent.