ACCEPTED
01-15-00152-cv
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/26/2015 2:56:24 PM
CHRISTOPHER PRINE
CLERK

NO. 01-15-00152-CV

In the Court of Appeals
For the First Judicial District of Texas
at Houston

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
8/26/2015 2:56:24 PM
CHRISTOPHER A. PRINE
Clerk

## DONALD B. MULLINS and BLUE SKY RIGHT OF WAY, LLC
### Cross-Plaintiff(s) - Appellants

## vs.

## MARTINEZ R.O.W., L.L.C. f/k/a MARTINEZ INVESTMENTS, L.L.C.
### Cross-Defendant – Appellee

On Appeal from the 149th District Court of Brazoria County, Texas;
Trial Court Cause No. 79750-CV

# BRIEF OF APPELLEE MARTINEZ R.O.W., LLC
# F/K/A MARTINEZ INVESTMENTS, L.L.C.

WRIGHT & GREENHILL, P.C.
David P. Boyce
State Bar No. 02759770
dboyce@w-g.com
221 W. 6th Street, Suite 1800
Austin, Texas 78701
512-476-4600
512-476-5382 (Fax)

ATTORNEYS FOR APPELLEE

## IDENTITY OF PARTIES AND COUNSEL

| Cross-Plaintiffs and Appellants | Donald B. Mullins and Blue Sky Right of Way, L.L.C.[1] |
|---|---|
| Counsel for Cross-Plaintiffs and Appellant | Patrick F. Timmons<br>Timmons Law Firm<br>8556 Katy Freeway, Suite 120<br>Houston, Texas 77024-1806<br>713/465-7638 – Telephone<br>713/465-9527 - Facsimile |

| Cross-Defendant and Appellee | Martinez R.O.W., L.L.C. f/k/a Martinez Investments, L.L.C. |
|---|---|
| Counsel for Cross-Defendant and Appellee | David P. Boyce<br>Wright & Greenhill, P.C.<br>221 West 6th Street, Suite 1800<br>Austin, Texas 78701<br>512/476-4600 – Telephone<br>512/476-5382 - Facsimile |

---

[1] Blue Sky Right of Way, L.L.C. ("Blue Sky") is listed as Appellant on Appellant's Brief but was not a party before the trial court and was not granted leave to appear as a cross-plaintiff in the Court below.

ii

# TABLE OF CONTENTS

Identity of Parties and Counsel ................................................................... ii

Table of Contents ....................................................................................... iii

Index of Authorities .................................................................................... v

Statement of the Case.................................................................................. 1

Issues Presented for Review ....................................................................... 3

Statement Regarding Oral Argument.......................................................... 4

Citations to the Record................................................................................ 4

Statement of Facts....................................................................................... 5

Scope and Standard of Review ................................................................... 8

Summary of Argument ................................................................................ 8

Argument .................................................................................................... 11

    I.   The Court was correct in granting Appellee's Motion for
    Summary Judgment under Tex. Labor Code § 417.004
    because it negated the statutory exception and Appellant
    failed to produce any evidence to satisfy the exception ..................... 11

    II.  The trial court correctly denied Appellant's Motion to
    Vacate Judgment and for New Trial and for Leave to File
    Amended Pleading and Supplemental Material in
    Response to Cross-Defendant Martinez R.O.W., L.L.C.'s
    Motion for Summary Judgment...................................................... 21

Conclusion and Prayer ................................................................................ 30

Certificate of Compliance............................................................................ 32

Certificate of Service ................................................................................. 32

Appendix

Tab 1 – Tex. Civ. Stat. Ann., Art. 8306 § 3

Tab 2 – Tex. Civ. Stat. Ann., Art. 8306 § 3(d)

Tab 3 – Tex. Labor Code § 401.011

Tab 4 – Tex. Labor Code § 408.001

Tab 5 – Tex. Labor Code § 417.004

# INDEX OF AUTHORITIES

**Cases**

*Automaker, Inc. v. CCRT Company, Ltd.*, 976 S.W.2d 744, 746
(Tex. App. – Houston [1st Dist.] 1998, no pet.) ............................................... 22

*Boarder to Boarder Trucking Co., Inc. v. Mondi, Inc.*, 831 S.W.2d
495, 498-99 (Tex. App. – Corpus Christi 1992, no writ) ............................................... 22

*City of Beaumont v. Graham*, 441 S.W.2d 829 (Tex. 1969) ............................................... 12

*City of El Paso v. Collins*, 440 S.W.3d 879 (Tex. App. – El Paso 2013, no pet.) ..... 29

*Ensearch Corp. v. Parker*, 794 S.W.2d 2 (Tex. 1990) ............................................... 13

*Fairfield Insurance Company v. Stephens Martin Paving, L.L.C.*,
246 S.W.3d 653 (Tex. 2008) ............................................... 24

*Gilbane Building Co. v. Keystone Structural Concrete*, 263 S.W.3d 291
(Tex. App. – Houston [1st Dist.] 2007, no pet.) ............................................... 14

*Granite Construction Co. v. Bituminous Insurance Cos.*, 832 S.W.2d 427, 430
(Tex. App. – Amarillo 1992, no writ) Argument ............................................... 16

*Henkel v. Norman*, 441 S.W.2d 925, 927 (Tex. 1996) ............................................... 8

*Hill v. Milani*, 678 S.W.2d 203, 205 (Tex. App. – Austin 1984)
aff'd 686 S.W.2d 610 (Tex. 1985) ............................................... 22

*Houston Lighting & Power Co. v. Eller Outdoor Advertising Company*,
635 S.W.2d 133 (Tex. App. – Houston [1st Dist.] 1982, writ ref'd n.r.e.) ............................................... 19

*Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 927 (Tex. 1996) ............................................... 8

*Koninklyke Nederlandsche Stoomboot Maalschappy, N.V. v. Royal Netherlands
Steamship Company*, 301 F.2d 741 (5th Cir. 1962) ............................................... 26

*Leinen v. Buffington's Bayou City Service Co.*, 824 S.W.2d 682, 685
(Tex. App. – Houston [14th Dist.] 1992, no writ) Argument ............................................... 22

*Monsanto Co. v. Owens-Corning Fiberglas Corp.*, 764 S.W.2d 293, 294
(Tex. App. – Houston [1st Dist.] 1988) Argument ............................................... 18, 19

*Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013)........................................... 8

*Port Royal Development Corp. v. Braselton Construction Co.*,
716 S.W.2d 630 (Tex. App. – Corpus Christi 1986, writ refused n.r.e.)................... 13

*Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995) .......... 8

*Scottsdale Insurance Co. v. Shahinpour*, 2006 WL 870642 (S.W.2d Tex)............... 16

*Texas General Indem. Co. v. Ellis*, 888 S.W.2d 830, 831-32
(Tex. App. – Tyler 1994, no writ)............................................................................ 22

*Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)..................... 8

*Varela v. American Petrofina Co. of Texas, Inc.*, 658 S.W.2d 561 (Tex. 1983) ....... 28

*West Texas Utilities Co. v. Renner*, 32 S.W.2d 264 (Tex. Civ. App. – Eastland
1930, aff'd, 53 S.W.2d 451 (Tex. Comm'n App. 1932)....................................... 25, 26

*Westfall v. Lorenzo Gin Company*, 287 S.W.2d 551 (Tex. Civ. App. – Eastland
1956, no writ)....................................................................................................... 25, 26


**Statutes and Rules**

Tex. Labor Code

        § 401.011(18)............................................................................................... 14
        § 408.001...................................................................................................... 14, 30
        § 408.001(a), (b) ........................................................................................... 30
        § 408.001(b), (c) ........................................................................................... 30
        § 417.004...................................................................................................... 33, 37

Tex. Civ. Stat. Ann.

        Art. 8306 § 3 .........................................................................................17, 18, 19
        Art. 8306 § 3(d).......................................................................................... 17, 33
        Art. 2212(a) (repealed)................................................................................ 34

Tex. Civ. Prac. & Rem. Code

§ 33................................................................................................ 7, 12, 15,
................................................................................................16, 17, 32,
................................................................................................33, 34, 36,
................................................................................................37
§ 33.004(i)(1)(2) ........................................................................ 35
§ 33.004(i)(l) ............................................................................. 35
§ 33.011(3)................................................................................. 16
§ 33.011(6)................................................................................. 34
§ 33.015..................................................................................... 34

## STATEMENT OF THE CASE

An entity owned or controlled by Appellant Donald Mullins ("Mullins"), Blue Sky Right of Way, L.L.C. ("Blue Sky") entered into a contract with Southern Brush S.W., Inc. to perform certain clearing of land and trimming of trees along a right of way. (1CR:192-195). Blue Sky in turn subcontracted a portion of the work to Martinez Right of Way, L.L.C. f/k/a Martinez Investments, L.L.C. ("Martinez"). (1CR:25). In the course of performing that work, one of Martinez's employees, Bonifacio Gomez, suffered an injury in the course and scope of his employment and he later initiated an action for damages against Mullins, among others. (1CR:5-12). Mullins asserted defenses to Mr. Gomez's allegations and filed a cross-claim[2] against Martinez, arguing that Martinez had agreed to indemnify and hold harmless Blue Sky, as well as Mullins individually, for any liability arising from Martinez's work pursuant to its agreement with Blue Sky, including supervision of its own employees at the job site. (1CR:5-12). Mullins sought indemnity based on that alleged agreement, as well as contribution under Chapter 33 of the Tex. Civ. Prac. & Rem. Code. (1CR:5-12).

Martinez's answer included a general denial, as well as the affirmative defense that it was afforded protection under the Texas Workers' Compensation Act because it was covered for workers' compensation insurance at the time of the on the job injury suffered by its employee, Bonifacio Gomez. (2CR:7-9).

Martinez then moved for a no evidence and traditional summary judgment with respect to Mullins' claims for indemnity and contribution, under § 417.004 of the Tex. Labor Code. That provision insulates an employer protected by workers' compensation from any claim for reimbursement asserted by a third party in an action for damages

---

[2] While incorrectly styled as a cross-claim, Mullins was actually asserting a third party action.

brought by the injured employee against that third party, unless the employer executed, prior to the time of the on the job injury, a written agreement to assume the third party's liability. (1CR:14-20).

Martinez presented summary judgment evidence that it was covered by a policy of workers' compensation at the time of Mr. Gomez's accident and that there was no written agreement under which Martinez assumed Mullins' liability. (1CR:41-95).

Mullins filed a motion to continue the summary judgment hearing (1CR:98-101) and a response in which he asserted that a certificate of insurance "authorized" by Martinez and the existence of a liability policy covering Martinez demonstrated an intent to indemnify Mullins and thus satisfied the statutory exception under Tex. Labor Code § 417.004. (1CR:108-176).

The trial court denied Mullins' motion for continuance (1CR:330) and granted the Motion for Summary Judgment (2CR:24) and Martinez's motion to sever the claims Mullins had asserted against it from the main action (1CR:328-329). Mullins filed a motion to vacate the judgment and for new trial, for leave to file an amended pleading, and for leave to file supplemental materials in response to Martinez's Motion for Summary Judgment (2CR:366-372), relief that was overruled by operation of law on February 9, 215 as to the Motion to Vacate and for New Trial, and denied by the Court on February 10, 2015 (2CR:420) at the same time the Court sustained Appellee's objections to Mullins' affidavit. This appeal followed.

2

# ISSUE PRESENTED FOR REVIEW

Mullins presented no summary judgment evidence of any written agreement executed by Martinez prior to Bonifacio Gomez's on the job injury of June 7, 2010, arguing instead that a certificate of insurance and the existence of a liability policy covering Martinez sufficed to satisfy the statutory exception.

*Did the district court properly grant Martinez's Motion for Summary Judgment under Tex. Labor Code § 417.004 absent evidence that any pre-accident written agreement had been executed by Martinez under which it assumed Mullins' liability?*

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument should not be necessary. The statute in this case is unambiguous, the limited and well defined exception is inapplicable here and the two additional exceptions advanced by Appellant have no basis in law.

## CITATIONS TO THE RECORD

"CR" refers to the two volume Clerk's Record, with volume number listed before "CR," followed by a colon and then page number.

## STATEMENT OF FACTS

The facts material to Martinez's Motion for Summary Judgment are not disputed. Appellant unsuccessfully attempted to supplement the summary judgment record with deposition excerpts from Mr. Gomez and his own conclusory statements regarding alleged gross negligence on the part of Martinez. The Court disallowed Mullins' motion for leave to supplement the summary judgment record. In any event, testimony allegedly indicating gross negligence on the part of Martinez is irrelevant to the issue before the Court.

Appellant Mullins owns Blue Sky Right of Way, L.L.C. ("Blue Sky"), whose business includes the clearing of land, tree trimming and related work (1CR:116). Blue Sky contracted with Southern Brush S.W., Inc. to perform certain clearance and tree trimming work along a right-of-way (1CR:192-195) and in turn entered into an agreement with Martinez to provide labor at a location in Brazoria County, Texas. (1CR:116). Bonifacio Gomez was an employee of Martinez, an employer covered by workers' compensation insurance. (1CR:41-92; 1CR:109). Mr. Gomez was injured at the job site while working for Martinez and performing the work Martinez had agreed to undertake for Blue Sky. (1CR:116).

There was no written agreement between Martinez and Blue Sky or Mullins pertaining to Martinez's work on the "Southern Brush" job site in Brazoria County, something Mullins acknowledged under oath in his deposition that was taken on June 5, 2013, well before Martinez's entry into the lawsuit. (1CR:94). It appears that either prior to or contemporaneous with Martinez's commencement of the work Mullins received a certificate of insurance dated June 7, 2010, that shows as the insured Martinez

5

Investments, L.L.C., and identifies three separate policies of insurance issued by three insurers for comprehensive general liability, automobile liability and workers' compensation, respectively. The certificate identifies as "certificate holder" Blue Sky Right of Way, L.L.C. It nowhere indicates that Blue Sky or Mullins would be shown as an additional insured under any of the three policies. (1CR:120).

Mullins contends that Martinez agreed to assume Blue Sky's or his liability for injuries to Martinez's employees on the job, and to provide insurance for Blue Sky, but there is no written proof to support either assertion. Martinez was protected by an insurance policy issued by the Travelers' Indemnity Company of Connecticut that contained commercial general liability coverage, a (possibly incomplete) copy of which was attached to Mullins' summary judgment response, but the policy nowhere mentions Blue Sky or Mullins, nor is there any evidence that it provided additional insurance coverage for either at the time of the accident.

Mr. Gomez initiated a personal injury action against Mullins and others, in response to which Mullins asserted certain affirmative defenses (1CR:5-13). On March 27, 2014, Mullins included with his second amended answer what he titled as a "cross-claim," although it initiated actions against persons and entities who were not prior parties to the case (Martinez and Hallmark Specialty Insurance Company), and should have been identified as an original third party action. (1CR:5-13).

As to Martinez, Mullins sought contractual indemnity as well as contribution pursuant to Chapter 33 of the Tex. Civ. Prac. & Rem. Code, noting he joined in a motion to designate Martinez as a responsible third party.

Martinez filed its original answer on May 15, 2014, asserting a general denial and as an affirmative defense, the protections afforded to it under the Texas Workers' Compensation Act, in view of its position as a covered employer, as those terms are defined in the Act. (2CR:7-9).

On October 17, 2014, Martinez filed its no evidence and traditional motion for partial summary judgment.[3] As a basis for its motion, Martinez relied on Tex. Labor Code § 417.004, insulating a covered employer under the Act from a reimbursement claim by a third party who is potentially liable to an injured employee, unless the employer executed before the on the job injury a written agreement with that third party to assume its liability. (1CR:14-20).

Mullins filed a motion to continue the summary judgment hearing (1CR:98-101) and a response to Martinez's summary judgment motion (1CR:108-176), with exhibits. The trial court denied Mullins' motion for continuance and granted Martinez's summary judgment motion (2CR:24) and its Motion for Severance (1CR:328-329). Thereafter, Mullins filed a motion to vacate the judgment and for new trial, and for leave to file an amended pleading and to supplement the summary judgment evidence. (2CR:366-372). That motion was overruled by operation of law on February 9, 2015 and denied by the Court on February 10, 2015, which further sustained Martinez's objections to Mullins' supplemental affidavit. (2CR:420). This appeal followed.

---

[3] The motions were designated as "partial" because Mullins had cross-claims pending against Hallmark and, of course, Plaintiff Bonifacio Gomez had asserted causes of action against a number of parties, including Mullins and Southern Brush, S.W., Inc.

## SCOPE AND STANDARD OF REVIEW

This Court's review of the district court's Order granting Martinez's no evidence and traditional motion for summary judgment is de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A defendant may move for summary judgment on an affirmative defense that has been pled or raised in the motion itself. *Randall's Food Markets, Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995). When it does so, it must prove each element of its defense as a matter of law. *Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 927 (Tex. 1996). A defendant may move for summary judgment by disproving as a matter of law an essential element of the plaintiff's cause of action. *Henkel v. Norman*, 441 S.W.3d 249, 251 (Tex. 2014); *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013).

## SUMMARY OF THE ARGUMENT

This case is controlled by statute, specifically § 417.004 of the Tex. Labor Code, which effectively insulates a covered employer[4] from an action seeking contribution and indemnity brought by parties who have been sued by the subscribing employer's employee for injuries in the course and scope of employment. The exclusive remedy provision of the Workers' Compensation Act, Tex. Labor Code § 408.001, protects the covered employer from a common law cause of action asserted by an employee or the legal beneficiaries of an employee injured or killed in the course and scope of employment, with the sole exception a suit for exemplary damages brought by the spouse

---

[4] The Act defines "Employer" as "a person who makes a contract of hire, employs one or more employees, and has workers' compensation coverage." Tex. Labor Code § 401.011(18). By definition, an employer carries workers' compensation coverage.

8

or heirs of the body of the deceased employee for intentional or grossly negligent conduct on the part of the employer.

Tex. Labor Code § 417.004 protects the employer from having to reimburse a third party that is sued by the employee or his beneficiaries for damages, barring the liable third party's claims for contribution and indemnity unless the employer has executed, before the on the job injury or death, a written agreement with the third party to assume its liability.

Mullins' "cross-claim" against Martinez was clearly an attempt by a third party sued by the covered employee, Bonifacio Gomez, to obtain reimbursement from Martinez in the form of contractual indemnity, or contribution under Chapter 33 of the Tex. Civ. Prac & Rem Code.

Martinez promptly asserted the protections of the Texas Workers' Compensation Act in its initial pleading. Its summary judgment motion established its status as an employer covered by a policy of workers' compensation issued by Texas Mutual Insurance Company. It further established the lack of any pre-injury written agreement executed by Martinez to assume Mullins' potential liability to Martinez's employees injured on the job. Martinez negated as a matter of law the one exception to the statutory protection afforded it against third party claims for contribution or indemnity, and indeed, produced sworn testimony from Mullins acknowledging the absence of any written agreement between Mullins (or Blue Sky) and Martinez relevant to the work underway at the time of Mr. Gomez's injuries.

At that point, the burden shifted to Mullins to present evidence of Martinez's execution of a written agreement under which it expressly assumed Mullins' liability to

9

Martinez's employees. Mullins presented no evidence to meet that burden, claiming instead that the statutory exception could be satisfied with circumstantial proof that there was an "intent" on the part of Martinez to assume Mullins' liability, namely, a certificate of insurance delivered to Mullins at or before Martinez's commencement of the work, as well as a copy of Martinez's general liability policy. (1CR:108-176). However, a certificate of insurance is not the equivalent of a written agreement to indemnify a party, and the policy simply shows that Martinez had insurance coverage in place at the time of the accident. Neither document is evidence that Martinez undertook, in writing, on or before June 7, 2010, to assume Mullins' liability.

In Mullins' belated motion to vacate, amend his pleading and supplement the summary judgment record, he advanced for the first time the argument that there was another exception to the statutory protection afforded covered employers from third party claims, that being when the employee's non-fatal injuries allegedly result from employer gross negligence. Tex. Labor Code § 417.004 does not mention such an exception, nor does any other Labor Code provision or case handed down in the last 50 years even hint at such an exception.

Finally, Mullins' post-hearing motion argued that because Martinez had been designated as a responsible third party under Chapter 33 of the Tex. Civ. Prac. & Rem. Code, it was subject to a claim for contribution under Chapter 33. That argument is specious. Chapter 33 permits a defendant who is jointly and severally liable for damages to the plaintiff to seek contribution against any other "liable defendant," a term that is defined in § 33.011(3) of the Tex. Civ. Prac. & Rem. Code in a way that clearly distinguishes it from "responsible third party." The fact that a party is designated as a

10

responsible third party does not make it a liable defendant. Because Martinez cannot be liable to its employee, Bonifacio Gomez, for injuries in the course and scope of employment, due to the exclusive remedy provisions of the Texas Workers' Compensation Act, it cannot be a "liable defendant," and accordingly, there is no viable contribution claim against it under Chapter 33 of the Tex. Civ. Prac & Rem. Code.

## ARGUMENT

I. **The Court was correct in granting Appellee's Motion for Summary Judgment under Tex. Labor Code § 417.004 because it negated the statutory exception and Appellant failed to produce any evidence to satisfy the exception.**

Mullins readily admits that there is no "separate contract of indemnity" that was executed by Martinez prior to Mr. Gomez's on the job injury on June 7, 2010. (Appellant's Brief, p. 8). He argues instead that Martinez "caused the delivery" of a certificate of insurance referencing a liability policy (*Id.*), that it performed work pursuant to an agreement (presumably oral) with Blue Sky, that it was later paid for that work, and that Martinez's liability policy "covers the activities undertaken by Blue Sky and Mullins . . ." (Appellant Brief, p. 15). Appellant nowhere explains how a certificate of insurance or a liability insurance policy is the equivalent of a written agreement executed by the employer to assume the liability of a third party. Those two documents, taken singly or together, do not constitute an explicit written agreement to indemnify Mullins, as even a cursory review of the applicable case law makes clear.

Cases construing Tex. Labor Code. § 417.004, and its predecessor under the prior Workers' Compensation Act, Tex. Civ. Stat. Ann. Art. 8306 § 3 (later Article 8306, § 3(d), have held that to satisfy the statutory exception to a covered employer's protection

11

from third party "reimbursement" actions, there must be a written, signed, pre-injury indemnity agreement under which the employer explicitly assumes the liability of the third party that seeks reimbursement or indemnity.

The Texas Supreme Court considered the question of what sort of indemnity language would satisfy the exception in the prior Workers' Compensation Act, Art. 8306, § 3, in *City of Beaumont v. Graham*, 441 S.W.2d 829 (Tex. 1969). An employee of a workers' compensation subscriber, Texas Tower & Construction Company (Texas Tower) was fatally injured while working in an elevated storage tank belonging to the City of Beaumont. *Id.* at 832. His beneficiaries sued the City, which in turn filed a third-party action against Texas Tower seeking indemnity or contribution. *Id.* The Texas Supreme Court noted that Texas Tower, as a workers' compensation subscriber, was protected against claims for indemnity and contribution by Art. 8306, § 3. *Id.* at 837. The City contended that its contract with Texas Tower contained indemnity language sufficient to satisfy the statutory exception.

The Texas Supreme Court disagreed, concluding that the indemnity provisions showed an intent to indemnify the City only for damages or claims resulting solely from the acts or conduct of Texas Tower. *Id.* at 838. The Texas Supreme Court agreed with the Court below that the language in the City of Beaumont/Texas Tower contract did not "evidence an intention of the parties that Texas Tower should indemnify the City for the consequences of its own negligent conduct, or for the consequences of the joint negligence of the parties, or for the consequences of the negligent conduct of the City and the non-negligent conduct of Texas Tower." *Id.* at 838-839. The Court concluded that the City's contribution and indemnity claims were not sustainable.

12

In *Port Royal Development Corp. v. Braselton Construction Co.*, 716 S.W.2d 630 (Tex. App. – Corpus Christi 1986, writ refused n.r.e.), the Court considered whether an indemnity agreement between the general contractor for the work, Port Royal Development Corporation, and the injured person's employer, Braselton Construction Co., satisfied the statutory exception to the workers' compensation bar to Port Royal's reimbursement claim. The Court reviewed the indemnity language, noting that it specifically excluded indemnity for injury arising out of the act or neglect of Port Royal. The Court concluded that in view of the fact the indemnity agreement did not indemnify Port Royal for its own negligence, it did not satisfy the statutory exception set forth in the prior Workers' Compensation Act, Art. 8306 § 3, Tex. Civ. Stat. Ann.

The Texas Supreme Court again considered what language was sufficient to satisfy the statutory exception to the workers' compensation bar against third party reimbursement actions in *Ensearch Corp. v. Parker*, 794 S.W.2d 2 (Tex. 1990). In that case, the Court held that the Act did not bar a pipeline owner's claim for indemnity from an independent contractor whose employees were asphyxiated during their work. Under the indemnity agreement in that case, the independent contractor assumed "entire responsibility and liability for any claims or actions based on or arising out of injuries, including death, to persons . . . sustained or alleged to have been sustained in connection with or to have arisen out of or incidental to the performance of this contract by [independent contractor] . . . regardless of whether such claims or actions are founded in whole or in part upon alleged negligence of [pipeline owner] . . . *Id.* at 6-7.

13

The Court concluded that the indemnity language in question sufficed to show that the employer expressly assumed third party liability for injuries to its own employees and thus met the exception to the workers' compensation bar. *Id.* at 8.

A more recent decision that addresses the current statutory bar, Tex. Labor Code § 417.004, is *Gilbane Building Co. v. Keystone Structural Concrete*, 263 S.W.3d 291 (Tex. App. – Houston [1st Dist.] 2007, no pet.). In that case, Gilbane Building Co. ("Gilbane") and Keystone Stuctural Concrete, Ltd. ("Keystone") contracted for Keystone to act as subcontractor on a construction project, during which a Keystone employee suffered injuries and sued Gilbane, resulting in a settlement. *Id.* at 294. Gilbane and its liability insurer, Zurich, sued Keystone for, among other things, contractual indemnity. *Id.* The Court first determined that the indemnity language in the Gilbane/Keystone contract did not satisfy the express negligence test and was thus unenforceable, affirming the trial court's grant of summary judgment as to Gilbane's contractual indemnity claim. However, Gilbane also argued that Keystone had breached contractual obligations relating to use of equipment that was in a safe condition and in compliance with applicable regulations, codes, ordinances, etc. *Id.* at 302. In response, Keystone asserted that Gilbane's claim for breach of contract was merely a reformulation of its indemnity claim and that regardless of how Gilbane characterized that reimbursement action, it was barred by Tex. Labor Code § 417.004. The Court of Appeals agreed, noting that the statute prohibited indemnity absent an express agreement by the employer to indemnify the third party in writing. *Id.* at 303. The Court concluded:

> The indemnity agreement here is unenforceable because it fails to comply with the express negligence rule [citation omitted]. Accordingly, we hold that § 417.004 bars Gilbane's breach of contract claims against Keystone.

14

*Id.*

In short, Texas courts that have considered the applicability of Tex. Labor Code § 417.004 and its predecessor have concluded that the exception to the bar against third party reimbursement actions requires an explicit written agreement by the employer to assume the liability of the third party in the form of enforceable indemnity language that satisfies the express negligence test. In this case, by Mullins' own admission, there is no written agreement relating to Martinez's work for Mullins or Blue Sky, much less a conspicuous indemnity provision that meets the express negligence test.

Mullins does not cite any case holding that the statutory exception can be satisfied by something other than a written contract of indemnity under which the employer expressly assumes the third party's liability. Indeed, in the "contractual indemnity" section of his brief (Appellant Brief, pp. 15-16), he cites no case at all. Rather, he argues that there was in fact a written agreement to indemnify him evidenced by the certificate of insurance he received and by Martinez's liability policy, which he attached to his summary judgment response. (1CR:123-176).[5] The argument is unsupportable, for a number of reasons.

First, the certificate of insurance that is dated June 7, 2010 specifically notes, at the outset:

> [THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.]

---

[5] The copy of the Travelers policy in the record is incomplete (1CR:123-176); what appears to be a more complete copy is attached in the appendix to Appellant's Brief.

15

The law regarding certificates of insurance is well established. A certificate of insurance is not the equivalent of an insurance policy, it cannot alter the terms of an insurance policy, and it does not estabish any contractual relationship between the entity issuing the certificate and the certificate holder. See, e.g., *Scottsdale Insurance Co. v. Shahinpour*, 2006 WL 870642 (S.W.2d Tex) (certificate of insurance that states it does not amend, extend or alter coverage afforded by the policies below, does not alter the terms of any insurance policy, and creates no contract for insurance coverage); *Granite Construction Co. v. Bituminous Insurance Cos.*, 832 S.W.2d 427, 430 (Tex. App. – Amarillo 1992, no writ) (any insurance afforded to Granite Construction Co., despite being shown as an additional insured in a certificate of insurance, is afforded by the policies and not the certificate itself). Accordingly, the certificate itself is not a written "agreement" of any kind between Mullins or Blue Sky and the certificate issuer (an insurance agency is identified as the producer), or any insurer of Martinez. It was not executed by Martinez, and it certainly cannot constitute an express agreement by Martinez to assume Blue Sky's or Mullins' liability for injury to one of Martinez's employees.

Second, setting aside the fact that the Martinez liability policy Mullins also relies on is not certified or proven up through a business records affidavit of any kind, it has no relevance here. The affidavit Mullins attached to his summary judgment response, in paragraph 6 (1CR:116-117), offers his opinion that the policy in question "provides liability insurance coverage for the officers and agents of covered organizations." Needless to say, the interpretation of an insurance policy presents an issue of law for the Court, not susceptible to construction by interested parties.

16

Mullins asserts in the summary judgment response itself that "Paragraphs 1.a and 2.b(2) of the Coverage Form at pages 2 and 3 of 16" provide coverage for Blue Sky and Mullins. (1CR:112). Mullins' efforts at insurance policy construction do not avail him here.

Paragraph 1.a of the Commercial General Liability Coverage Form (1CR:134) simply states that the insurer "will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies . . ." That provision does not define the term "insured," but language preceding that provision on the same page of the policy indicates that the word insured "means any person or organization qualifying as such under Section II – Who Is An Insured." (1CR:134).

The Section II – Who Is An Insured provision of the Commercial General Liability Coverage Form in the policy included in the appendix to Appellant's Brief, subpart (c), states that if the named insured is a limited liability company (the case here), the entity itself is an insured, its members, "but only with respect to the conduct of your business," and the named insured's managers. That definition does not include either Mullins or Blue Sky.

Mullins also appears to cite Exclusion 2(b)(2) on page 2 of the Commercial General Liability Coverage Form in the Travelers policy (in the appendix to Appellant's Brief), but that provision merely excludes coverage for bodily injury for which the insured "is obligated to pay damages by reason of the assumption of liability in a contract or agreement." There is an exception to the contractual liability exclusion for, among other things, an "insured contract," but Appellant makes no argument that the exception

17

applies here.[6] Of course, the fact that Martinez's liability policy may include coverage for certain of its indemnity obligations is not evidence that such an indemnity obligation exists. Once again, Mullins appears to believe, mistakenly, that proof of liability coverage for Martinez, either in the form of a certificate of insurance or the liability policy itself, somehow equates to an explicit assumption of Mullins' or Blue Sky's liability. Proof of insurance that might cover an obligation is not the same as an explicit assumption of that obligation.

In short, after acknowledging in sworn testimony that there was no written agreement between himself or Blue Sky and Martinez, Mullins' only response to the Appellee's summary judgment motion was to produce documents that at most evidence insurance coverage for Martinez. Mullins cites no case that has held that a party seeking indemnity from a covered employer need not produce any writing actually executed by the employer expressly assuming such liability. Having failed to present any evidence that meets the statutory exception to the employer's protection from third party suits, Mullins has no basis to challenge the correctness of the summary judgment granted against him.

Mullins argues that a contract of indemnity (and presumably one sufficient to satisfy the requirements of Tex. Labor Code § 417.004) may be either express or implied, citing *Monsanto Co. v. Owens-Corning Fiberglas Corp.*, 764 S.W.2d 293, 294 (Tex. App. – Houston [1st Dist.] 1988), which in turn cites *Houston Lighting & Power Co. v.*

---

[6] The policy in question defines "insured contract" to include (subpart f): "That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization. Tort liability means the liability that would be imposed by law in the absence of any contract or agreement." In effect, the "insured contract" exception restores coverage for explicit indemnity obligations by which the insured assumes the tort liability of another party.

18

*Eller Outdoor Advertising Company*, 635 S.W.2d 133 (Tex. App. – Houston [1st Dist.] 1982, writ ref'd n.r.e.). Neither case supports the notion that anything other than a "written agreement" executed by the employer pre-injury satisfies the exception to the statutory protection afforded employers from third party actions. *Monsanto* involved an employee of a subcontractor, Owens-Corning Fiberglas Corp. ("Owens-Corning"), who brought a personal injury action against the Monsanto Company ("Monsanto"). *Id.* at 294. Monsanto asserted a third party action against Owens-Corning based on the indemnification language contained in a written contract between the two companies. Citing the indemnity provision at length, the Court noted that the provision nowhere included the word "negligence" or adequately defined the scope of the protection that was provided and: "Because the intent of the parties is not specifically stated within the four corners of the contract, we find that this indemnity provision does not satisfy the express negligence test." *Id.* at 295.

The Court concluded, in effect, that the failure of the written indemnity provision to satisfy the express negligence test did not bring it within the exception of the statutory protection provided the employer under the Texas Workers' Compensation Act (albeit an earlier version of the Act).

The *Houston Lighting & Power* decision did not involve a written contract of indemnity. Rather, an employee of Eller Outdoor Advertising Company of Texas ("Eller") was electrocuted after contacting an HL&P line. His widow and children sued HL&P, which settled that action and then sought indemnification from Eller pursuant to a section of the Public Utilities Act setting forth the duties of any party working within six feet of a high voltage line, a violation of which entitles the utility to indemnification

19

under an applicable provision of the Public Utilities Act. Eller argued the predecessor to the Tex. Labor Code § 417.004 barred the indemnity action, but the Court concluded that HL&P's indemnity action was not "on account of" injury to or death of Eller's employee but rather was an action arising from a breach of the duties Eller owed under the applicable provision of the Public Utilities Act. *Id.* at 135.

The Court accepted HL&P's reasoning, concluding that the "later, more specific Public Utilities Act should be given controlling effect over the older, more general terms of the Workers' Compensation Act." *Id.* The *Houston Lighting & Power* decision simply recognizes that the specific indemnity granted to public utilities against entities who violate the "six foot rule" trumps the statutory protection afforded employers under the Texas Workers' Compensation Act. It does not stand for the proposition that a third party not entitled to statutory indemnity can dispense with the requirements of Tex. Labor Code § 417.004 of a written agreement.

Finally, Mullins disputes the applicability of the express negligence rule. While as noted above, numerous cases have held that written indemnity language that does not satisfy the express negligence test does not meet the requirements of the statutory exception in Tex. Labor Code § 417.004, that is not the dispositive issue here. While in theory there may be language in a written agreement executed by the employer by which it expressly assumes the liability of the third party that falls short of the express negligence standard, that is not the case here. In the instant matter, there simply is <u>no</u> indemnity agreement of any kind executed by Martinez and accordingly, the question of whether or not the indemnity language must satisfy the express negligence test to meet the statutory exception is moot.

**II.    The trial court correctly denied Appellant's Motion to Vacate Judgment and for New Trial and for Leave to File Amended Pleading and Supplemental Material in Response to Cross-Defendant Martinez R.O.W., L.L.C.'s Motion for Summary Judgment.**

It appears Mullins' primary complaint with respect to the Court's denial of his motion to vacate, etc. is the refusal to permit him to amend his pleading to add a new party and to assert an entirely new basis to circumvent the workers' compensation bar to his third party action, and to present additional summary judgment evidence to support same.

The trial court was correct in denying the motion, for a number of reasons. First, the proposed first amended cross-claim attempted to add an entirely new party, Blue Sky, for reasons nowhere addressed in the motion for leave itself. Blue Sky was not a defendant in the action initiated by Bonifacio Gomez and accordingly, there would be no legal basis under any theory alleged by Mullins, or later by Blue Sky, for it to seek indemnity for liability it could not have had to Mr. Gomez, who had never asserted claims against Blue Sky. Blue Sky could not seek indemnity or contribution for liability it could not have to Plaintiff Bonifacio Gomez, who had never sued it.

Second, the proposed amended pleading attempted to add an entirely new basis for contribution or indemnity, namely that Martinez was guilty of gross negligence with respect to Mr. Gomez's injuries, and that somehow supported Mullins' claim for contribution or indemnity. The assertions of gross negligence had never been pleaded previously, and Mullins did not make such contentions in any amended pleading that he could have filed, without leave of court, after Martinez's Motion for Summary Judgment was filed on October 17, 2014, and before it was heard on November 25, 2014.

21

It is well established that a trial court does not abuse its discretion by refusing to allow a non-movant to amend its pleadings after the summary judgment hearing has taken place. *Leinen v. Buffington's Bayou City Service Co.*, 824 S.W.2d 682, 685 (Tex. App. – Houston [14th Dist.] 1992, no writ); *Hill v. Milani*, 678 S.W.2d 203, 205 (Tex. App. – Austin 1984) aff'd 686 S.W.2d 610 (Tex. 1985). Furthermore, after the trial court has rendered judgment on a motion for summary judgment, it cannot grant a motion to amend the pleadings. *Automaker, Inc. v. CCRT Company, Ltd.*, 976 S.W.2d 744, 746 (Tex. App. – Houston [1st Dist.] 1998, no pet.); *Texas General Indem. Co. v. Ellis*, 888 S.W.2d 830, 831-32 (Tex. App. – Tyler 1994, no writ); *Boarder to Boarder Trucking Co., Inc. v. Mondi, Inc.*, 831 S.W.2d 495, 498-99 (Tex. App. – Corpus Christi 1992, no writ). In the present action, the Court granted Martinez's Motion for Summary Judgment and its Motion to Sever Mullins' claims against it on November 25, 2014. (2CR:24; 1CR:328-329). The summary judgment order, combined with the severance, effectively made the summary judgment final and appealable for all purposes and accordingly, the Court acted correctly in refusing Mullins' efforts to amend his pleadings post-summary judgment hearing and post-final judgment.

The Court did not err in denying Mullins' request to supplement the summary judgment record with a new affidavit from Mullins (2CR:393-394)[7] purporting to address, for the first time, the circumstances of the accident, as well as excerpts from the deposition of Bonifacio Gomez taken on April 30, 2013 (more than 18 months before the summary judgment hearing in this matter). Mullins offered no basis for seeking permission to submit summary judgment evidence four weeks after the summary judgment hearing and the Order granting same, merely pointing out that he had

---

[7] The Court sustained Martinez's objections to Mullins' supplemental affidavit. (2CR:420).

previously moved for a continuance to permit him "to submit additional argument and authorities on the issue of Martinez's indemnifications of Mullins, in order to thoroughly present that issue to the Court." (2CR:367). In that regard, it is important to note that in his original motion to continue the summary judgment hearing, he cited as a basis for same the need to "properly respond" to case law, submit evidence to the Court of payments made by Mullins to Martinez, and to permit Mullins to prepare a "detailed affidavit" to discuss "the facts leading to the engagement of Martinez to provide labor, and the consideration therefore . . ." None of the "supplemental" evidence Mullins sought leave to submit post-hearing fits within any of the categories offered in support of his prior motion to continue the summary judgment hearing.

Setting aside the fact Mullins offered no justification for his belated effort to revise the pleadings, add a new party, assert new bases to circumvent the Texas Workers' Compensation Act, and to offer summary judgment evidence that presumably was available to him previously, neither the proposed amended pleading nor any of the "supplemental" evidence affects the outcome here.

Mullins advanced as an "additional legal theory" (Appellant's Brief, p. 26) the notion that if Martinez's conduct somehow constituted gross negligence, that would create an exception to the statutory bar to third party actions absent a prior explicit assumption of the third party's liability. The argument is completely without merit, not supported by any provision in the Texas Workers' Compensation Act, and the only decisions Mullins cites in support are more than 50 years old and pre-date the current Workers' Compensation Act by decades.

23

The Workers' Compensation Act exclusive remedy provision, Tex. Labor Code § 408.001, recognizes only one exception to the protection afforded employers for injury to or death of employees, that is, the "surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence" may bring an action against an employer. Tex. Labor Code § 408.001(a), (b). Nothing in the Act indicates that in a non-fatal case, a third party sued by the injured employee may seek contribution or indemnity from the employer, if there is evidence that the latter is guilty of gross negligence. Presumably, if such an exception existed, it would be set out in Tex. Labor Code § 417.004, dealing specifically with an employer's liability to a third party sued by the injured worker. Mullins cites no case handed down since the effective date of the new Texas Workers' Compensation Act that even suggests such a "gross negligence" exception to the protection of the Act exists.

Mullins does cite a recent Texas Supreme Court decision, *Fairfield Insurance Company v. Stephens Martin Paving, L.L.C.*, 246 S.W.3d 653 (Tex. 2008). *Fairfield* in no way supports Appellant's argument regarding the "gross negligence exception." Rather, the case deals with the insurability of exemplary damages under a workers' compensation/employer liability policy. An employee of Fairfield's insured, Stephens Martin Paving, suffered fatal injuries in the course and scope of his employment and his spouse and children brought a suit for exemplary damages as permitted by Tex. Labor Code § 408.001(b),(c). In a lengthy and well reasoned opinion, the Texas Supreme Court concluded that the Fairfield policy's employer liability provisions covered the employer for gross negligence claims (*Id.* at 660), and that such insurance protection was not

24

against Texas public policy. Nothing in the decision suggests that there is any exception to the exclusive remedy protection afforded employers under the Act, other than claims brought by the surviving spouse and heirs of the body of an employee who suffers fatal injuries in the course and scope of employment, allegedly as a result of the employer's gross negligence. No issue was presented to or discussed by the Court as to whether gross negligence by the employer in a non-fatal injury context creates an additional exception to the protection from third party claims.

The other two cases cited by Mullins are simply too remote to have any precedential value. In *Westfall v. Lorenzo Gin Company*, 287 S.W.2d 551 (Tex. Civ. App. – Eastland 1956, no writ), third parties that were sued by an employee of Lorenzo Gin Company arising from a collison between two trucks sought contribution from the gin company, a Texas Workers' Compensation Act subscriber, alleging, among other things, that the gin company was guilty of gross negligence, contributing to the accident. The Court ultimately determined that the evidence the third parties had produced in response to the gin company's motion for summary judgment was insufficient to raise any fact question on the issue of gross negligence, but language in the decision implied that had there been such proof of gross negligence, a contribution or indemnity action might have been sustainable. *Id.* at 554. In support of that proposition, the Court in *Westfall* cited *West Texas Utilities Co. v. Renner*, 32 S.W.2d 264 (Tex. Civ. App. – Eastland 1930), aff'd, 53 S.W.2d 451 (Tex. Comm'n App. 1932). In *Renner*, the third party utility company sought contribution and indemnity from its contractor, Mosher Steel & Machinery Company, for a lawsuit brought against it by a Mosher employee who sustained serious electrical injuries. Among other things, in affirming a directed verdict

25

in favor of Mosher, the Court of Appeals noted that the utility had failed to establish that Mosher was guilty of "active negligence," and thus, any common law right to contribution was unsustainable, even setting aside the protections of the Workers' Compensation Act. The Court went on to say, in what amounted to dicta, that Mosher had "fully protected himself against his own negligence (not amounting to gross negligence) by providing compensation insurance for his employees, and could not be compelled to pay indirectly when no liability existed to pay directly." *Id.* at 270.

Needless to say, distinctions between active and passive negligence as a basis for common law contribution have no relevance here, given the fact that actions for contribution are controlled by Chapter 33 of the Tex. Civ. Prac. & Rem. Code, which makes no such distinctions.

The other case cited by Mullins, *Koninklyke Nederlandsche Stoomboot Maalschappy, N.V. v. Royal Netherlands Steamship Company*, 301 F.2d 741 (5th Cir. 1962), effectively recognizes that a written stevedoring contract in a maritime context enforceable under federally developed maritime law provided a basis for a third party ship owner to sue a stevedoring company covered by Texas workers' compensation for indemnity, in an action brought by a longshoreman employee. The Court concluded that if a longshoreman's action against the shipping company was permitted, "a state compensation act cannot prevent an action against the employer by the third party based on a federally judicially established maritime contractual warranty." *Id.* at 746.

In discussing *Westfall* and *Renner*, the Court interprets the state of Texas law in 1962, suggesting "that Texas is as yet unwilling to to rule out an indemnity where there is a showing of gross negligence on the part of the injured man's employer, and it might

even be read to imply that such an indemnity is not barred by Art. 8306." *Id.* at 646 (emphasis added).

The Fifth Circuit decision from more than 50 years ago indicating Texas law (as reflected in two appellate decisions from 1932 and 1956, respectively) was still unsettled as to whether allegations of gross negligence on the part of the employer created an exception to the Act's protections from third party liability, has been echoed by no Texas appellate court at any time in the ensuing five decades, and no case citing § 417.004 of the new Act, which has been in effect since 1993, or any decision construing its predecessor, Art. 8306, § 3(d), of the prior Texas Workers' Compensation Act, dating all the way back to the 1970s, suggests that any "gross negligence" exception actually exists.

In short, there is nothing in the current statutory provision relied on by Appellee, any other provision in the current Texas Workers' Compensation Act, or any case law since the new Act became effective to support Mullins' belated assertion of a "gross negligence" exception to the statutory protection from third party actions for reimbursement. Accordingly, even if the trial court had permitted a post-summary judgment pleading raising this outdated theory, and permitted the supplemental summary judgment evidence that Mullins argues raises a fact question regarding gross negligence, the outcome would not have changed.

Finally, Mullins argued in his Motion to Vacate that because Martinez had been designated as a responsible third party at some prior point, it is therefore "subject to the rules that apply to proportionate responsibility unless an exception thereto is applicable." (Appellant's Brief, p. 29). The argument is specious, as a simple reading of Chapter 33 of the Tex. Civ. Prac. & Rem. Code demonstrates. The definition of the term

27

"responsible third party" in pertinent part means "any person who is alleged to have caused or contributed to causing in any way the harm for which recovery of damages is sought . . ." § 33.011(6), Tex. Civ. Prac. & Rem. Code. That same section defines a "liable defendant" as "a defendant against whom a judgment can be entered for at least a portion of the damages awarded to the claimant." § 33.015, titled "Contribution," states, under subpart (a):

> If a defendant who is jointly and severally liable under § 33.013 pays a percentage of the damages for which the defendant is jointly and severally liable greater than his percentage of responsibility, that defendant has the right of contribution for the overpayment against <u>each other liable defendant</u> . . ."

Emphasis added.

Accordingly, contribution would exist in favor of Mullins against Martinez only if the latter could constitute a "liable defendant," as the term is defined in Chapter 33. Because Martinez cannot be liable to the "claimant" (Bonifacio Gomez) for any portion of the damages he is entitled to recover, because of the exclusive remedy provisions of the Texas Workers' Compensation Act, there exists no right of contribution against Martinez under Chapter 33.

Case law also supports the notion that there can be no contribution claim against a covered employer. In *Varela v. American Petrofina Co. of Texas, Inc.*, 658 S.W.2d 561 (Tex. 1983), the Court construed the prior statute relating to contribution among joint tortfeasors, Art. 2212(a), Tex. Civ. Stat. Ann. (repealed), holding that the protections of the prior Texas Workers' Compensation Act were an exception to the statute permitting contribution actions between joint tortfeasors.

28

The distinction between a liable defendant and a responsible third party is set out plainly in the case of *City of El Paso v. Collins*, 440 S.W.3d 879 (Tex. App. – El Paso 2013, no pet.).

The case involved the near drowning of a six year old girl while in the care of Children's Place Daycare. The child's parents brought an action against the daycare, which in turn designated the City of El Paso as a responsible third party. The plaintiffs then amended their action to include the City as a defendant, incorporating the motion to designate the City as a responsible third party as a basis for their affirmative claims against the City. *Id.* at 882.

The El Paso Court of Appeals concluded that to the extent the plaintiffs attempted to impose liability on the City based solely on the responsible third party designation, without establishing a waiver of the City's immunity, it was error to deny the City's plea to the jurisdiction. *Id.* The Court noted, citing Tex. Civ. Prac & Rem. Code § 33.004(i)(1)(2): "The filing or granting or a motion for leave to designate a person as a responsible third party does not impose liability against that person and may not be used in any other proceeding, on the basis of res judicata, collateral estoppel, or any other legal theory, to impose liability on that person."

The Court noted approving the City's position that a responsible third party designation could not establish liability against a party, stating: "The City is correct that the filing or granting of a motion for leave to designate a person as a responsible third party or a finding of fault against the person "does not by itself impose liability on the person." *Id.*, citing Tex. Civ. Prac & Rem. Code §33.004(i)(1).

29

In short, the language of Chapter 33 itself, and in particular the definitions of responsible third party and liable defendant, make it clear that a responsible third party designation does not establish liability of the party so designated, and that a claim for contribution under Chapter 33 can arise only against a liable defendant. Accordingly, Mullins' argument that the mere designation of Martinez, a covered employer, subjects it to a contribution claim under Chapter 33 is entirely without merit.

## CONCLUSION AND PRAYER

The trial court was correct in granting Martinez's Motion for Summary Judgment based on the protections afforded it as an employer under the Workers' Compensation Act. Once Martinez demonstrated that it was a covered employer and that there was no written agreement executed by Martinez before the Gomez accident under which it expressly assumed the liability of Mullins and/or Blue Sky, it estabished a complete bar to Mullins' claims for indemnity or contribution. Mullins' efforts to circumvent the literal requirements of the statutory exception by producing a certificate of insurance identifying policies covering Martinez, as well as a copy of Martinez's commercial insurance policy, establish merely that Martinez had liability coverage in place at the time of the incident. Neither document constitutes proof of an explicit written agreement executed by Martinez pre-accident under which it assumed the liability of Mullins and/or Blue Sky.

Mullins' belated effort to replead to include gross negligence allegations, or to supplement the summary judgment evidence with information purporting to create a fact question on the issue of gross negligence is of no use to him here because there is no

30

recognized exception to § 417.004 for an employer's alleged gross negligence. Gross negligence by the employer can provide a basis for recovery only to the spouse and heirs of the body of an employee who suffers fatal injuries in the course and scope of employment, not the case here.

Finally, Mullins' argument that the designation of Martinez as a responsible third party creates a right of contribution under Chapter 33 is contradicted by the plain language of the statute itself.

WHEREFORE, PREMISES CONSIDERED, Appellee Martinez R.O.W., L.L.C. f/k/a Martinez Investments, L.L.C. prays that this Court affirm the trial court's judgment and further grant Appellee all other relief to which it may show itself justly entitled.

Respectfully submitted,

WRIGHT & GREENHILL, P.C.
221 W. 6th Street, Suite 1800
Austin, Texas 78701
512/476-4600
512/476-5382 (Fax)


By:/s/ David P. Boyce
    David P. Boyce
    State Bar No. 02759770
    dboyce@w-g.com

ATTORNEYS FOR APPELLEE

31

## CERTIFICATE OF COMPLIANCE

I hereby certify that the above and foregoing Brief of Appellee contains 6,740 words and therefore complies with the maximum length required under Tex. R. App. P. 9.4.

/s/ David P. Boyce
David P. Boyce

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing has been served on the following counsel of record in accordance with the Texas Rules of Civil Procedure, on this 26th day of August, 2015:

*Via ECF and Facsimile*
Patrick F. Timmons, Jr.
8556 Katy Freeway, Suite 120
Houston, Texas 77024-1806
pft@timmonslawfirm.com

/s/ David P. Boyce
David P. Boyce

# APPENDIX TAB 1

suspended; and that this Act shall take effect and be in force from and after its passage, and it is so enacted.

Passed the Senate, March 12, 1963: Yeas 25, Nays 5; May 23, 1963, Senate concurred in House amendment by a viva voce vote; passed the House, May 23, 1963, with amendment, by a non-record vote.

Approved June 10, 1963.

Effective 90 days after May 24, 1963, date of adjournment.

---

# WORKMEN'S COMPENSATION—LIABILITY OF ASSOCIATION

## CHAPTER 437

### S. B. No. 223

An Act amending the Texas Workmen's Compensation Insurance Laws of this state by amending Section 3 of Article 8306, Revised Civil Statutes of 1925, as amended; providing a savings clause; and declaring an emergency.

*Be it enacted by the Legislature of the State of Texas:*

Section 1. Section 3 of Article 8306, Revised Civil Statutes of Texas, 1925, as amended,[65] is amended to read hereafter as follows:

"Sec. 3. The employees of a subscriber and the parents of minor employees shall have no right of action against their employer or against any agent, servant or employee of said employer for damages for personal injuries, and the representatives and beneficiaries of deceased employees shall have no right of action against such subscribing employer or his agent, servant or employee for damages for injuries resulting in death, but such employees and their representatives and beneficiaries shall look for compensation solely to the association, as the same is hereinafter provided for. All compensation allowed under the succeeding sections herein shall be exempt from garnishment, attachment, judgment and all other suits or claims, and no such right of action and no such compensation and no part thereof or of either shall be assignable, except as otherwise herein provided, and any attempt to assign the same shall be void. If an action for damages on account of injury to or death of an employee of a subscriber is brought by such employee, or by the representatives or beneficiaries of such deceased employee, or by the association for the joint use and benefit of itself and such employee or such representatives or beneficiaries, against a person other than the subscriber, as provided in Section 6a, Article 8307, Revised Civil Statutes of Texas, 1925, and if such action results in a judgment against such other person, or results in a settlement by such other person, the subscriber, his agent, servant or employee, shall have no liability to reimburse or hold such other person harmless on such judgment or settlement, nor shall the subscriber, his agent, servant or employee, have any tort or contract liability for damages to such other person because of such judgment or settlement, in the absence of a written agreement expressly assuming such liability, executed by the subscriber prior to such injury or death. No part of this Section is intended to lessen or alter the employees existing rights or cause of action either against his employer, its subscriber, or any third party.

65. Vernon's Ann.Civ.St. art. 8306, § 3.

"The Association, its agent, servant or employee, shall have no liability with respect to any accident based on the allegation that such accident was caused or could have been prevented by a program, inspection, or other activity or service undertaken by the association for the prevention of accidents in connection with operations of its subscriber; provided, however, this immunity shall not affect the liability of the association for compensation or as otherwise provided in this law. No part of this Section is intended to lessen or alter the employees existing rights or cause of action either against his employer, its subscriber, or any third party."

Sec. 2. If any Section, paragraph or provision of this Act be declared unconstitutional or invalid for any reason, such holding shall not in any manner affect the remaining Sections, paragraphs or provisions of this Act, but the same shall remain in full force and effect.

Sec. 3. The importance of this legislation and the crowded condition of the calendar in both Houses create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and said Rule is hereby suspended; and that this Act shall take affect and be in force from and after its passage, and it is so enacted.

Passed the Senate, March 21, 1963: Yeas 30, Nays 0; May 20, 1963, by authority of H.C.R. No. 100 bill was returned from Governor's office and correction made; passed the House, May 8, 1963, by a non-record vote; May 20, 1963, H.C.R. No. 100 was adopted.

Approved June 10, 1963.

Effective 90 days after May 24, 1963, date of adjournment.

---

## LIBRARIES—DISTRIBUTION OF STATE DOCUMENTS

### CHAPTER 438 [66]

### S. B. No. 266

**An Act to establish depository libraries with authority in the Director and Librarian of the Texas State Library; requiring certain acts to be performed to facilitate distribution of state documents; and declaring an emergency.**

*Be it enacted by the Legislature of the State of Texas:*

Section 1. The term "state document" as used in this Act means all publications of state agencies which the Texas State Library is authorized by Revised Civil Statutes, 1925, Article 5442, to acquire and distribute.

Sec. 2. The term "depository libraries" as used in this Act means the Texas State Library, libraries of state institutions of higher education, and other libraries so designated by the Texas Library and Historical Commission upon determination that such designations are necessary to provide adequate access to state documents.

Sec. 3. Each state agency shall furnish the Texas State Library with state documents in the quantity specified in the Revised Civil Statutes, 1925, Article 5442.

Sec. 4. State documents shall be made available to depository libraries under the direction of the Texas State Library.

Sec. 5. To facilitate distribution of state documents, each state agency shall furnish the Texas State Library with a list of state documents

66. Vernon's Ann.Civ.St. art. 5442a.

# APPENDIX TAB 2

and that this Act take effect and be in force from and after its passage, and it is so enacted.

Passed the Senate on April 21, 1983: Yeas 31, Nays 0; passed the House on May 6, 1983, by a non-record vote.

Approved May 17, 1983.

Effective Aug. 29, 1983, 90 days after date of adjournment.

---

# WORKERS' COMPENSATION—BENEFITS—ASSIGNMEN'I  'O INSURANCE COMPANY

## CHAPTER 131

## H. B. No. 68

### AN ACT

relating to the assignment of certain workers' compensation benefits to an insurance company.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1. Section 3, Article 8306, Revised Statutes, is amended[55] to read as follows:

Sec. 3. (a) The employees of a subscriber and the parents of minor employees shall have no right of action against their employer or against any agent, servant or employee of said employer for damages for personal injuries, and the representatives and beneficiaries of deceased employees shall have no right of action against such subscribing employer or his agent, servant or employee for damages for injuries resulting in death, but such employees and their representatives and beneficiaries shall look for compensation solely to the association, as the same is hereinafter provided for.

(b) All compensation allowed under the succeeding sections herein shall be exempt from garnishment, attachment, judgment and all other suits or claims, and no such right of action and no such compensation and no part thereof or of either shall be assignable, except as otherwise herein provided, and any attempt to assign the same shall be void.

55. Vernon's Ann.Civ.St. art. 8306. § 3.

Additions in text indicated by underline; deletions by [strikeouts]

(c)  In the event the association denies liability in a claim and an accident or health insurance company provides benefits to the employee for medical aid, hospital services, nursing services or medicine, then the right to recover such amount may be assigned by the employee to the health or accident insurance company.

(d)  If an action for damages on account of injury to or death of an employee of a subscriber is brought by such employee, or by the representatives or beneficiaries of such deceased employee, or by the association for the joint use and benefit of itself and such employee or such representatives or beneficiaries, against a person other than the subscriber, as provided in Section 6a, Article 8307, Revised Civil Statutes of Texas, 1925, and if such action results in a judgment against such other person, or results in a settlement by such other person, the subscriber, his agent, servant or employee, shall have no liability to reimburse or hold such other person harmless on such judgment or settlement, nor shall the subscriber, his agent, servant or employee, have any tort or contract liability for damages to such other person because of such judgment or settlement, in the absence of a written agreement expressly assuming such liability, executed by the subscriber prior to such injury or death. [No-part-of-this-Section-is-intended-to lessen-or-alter-the-employees-existing-rights-or--cause--of--action either--against--his-employer,-its-subscriber,-or-any-third-party.]

(e)  The Association, its agent, servant or employee, shall have no liability with respect to any accident based on the allegation that such accident was caused or could have been prevented by a program, inspection, or other activity or service undertaken by the association for the prevention of accidents in connection with operations of its subscriber; provided, however, this immunity shall not affect the liability of the association for compensation or as otherwise provided in this law.

(f)  No part of this Section is intended to lessen or alter the employee's [employees] existing rights or cause of action either against his employer, its subscriber, or any third party.

Additions in text indicated by underline; deletions by [strikeouts]

SECTION 2.    The importance of this legislation and the crowded condition of the calendars in both houses create an emergency and an imperative public necessity that the constitutional rule requiring bills to be read on three several days in each house be suspended, and this rule is hereby suspended, and that this Act take effect and be in force from and after its passage, and it is so enacted.

Passed by the House on March 30, 1983: Yeas 137, Nays 0, 1 present, not voting; passed by the Senate on May 5, 1983: Yeas 31, Nays 0.

Approved May 17, 1983.

Effective May 17, 1983.

---

# WORKERS' COMPENSATION—DEATH BENEFITS— PRIOR INCAPACITY

## CHAPTER 132

### H. B. No. 99

### AN ACT

relating to the reduction of workers' compensation death benefits because of benefits paid for prior period of incapacity.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

SECTION 1.    Section 8b, Article 8306, Revised Civil Statutes of Texas, 1925, is amended[56] to read as follows:

Sec. 8b.    (a)  In case death occurs as a result of the injury after a period of total or partial incapacity, for which compensation has been paid, the period of incapacity shall be deducted from the total period of compensation and the benefits paid thereunder from the maximum allowed for the death.

(b)  Section 8b does not apply to lifetime death benefits as provided by Section 8 of this article but applies only to those beneficiaries receiving 360 weeks of benefits.

SECTION 2.    It is uncertain and has not been judicially determined whether the offset provided by Section 8b, Article 8306, Revised Civil Statutes of Texas, 1925, applies to the lifetime benefits provisions of Section 8 of that article.    The fact that no

56.   Vernon's Ann.Civ.St. art. 8306, § 8b.

Additions in text indicated by underline; deletions by [strikeouts]

# APPENDIX TAB 3

SUBCHAPTER A. SHORT TITLE; APPLICATION OF SUNSET ACT

Sec. 401.001. SHORT TITLE.
This subtitle may be cited as the Texas Workers' Compensation Act.

Sec. 401.002. APPLICATION OF SUNSET ACT.

Ed: Repealed by Acts 2005, 79th Leg., H.B. 7, eff. Sept. 1, 2005. As a division within the Texas Department of Insurance (TDI), the Divsion of Workers' Compensation is governed by the sunset provisons regarding TDI.

Sec. 401.003. ACTIVITIES OF THE STATE AUDITOR.
(a) The division is subject to audit by the state auditor in accordance with Chapter 321, Government Code. The state auditor may audit:
  (1) the structure and internal controls of the division;
  (2) the level and quality of service provided by the division to employers, injured employees, insurance carriers, self-insured governmental entities, and other participants;
  (3) the implementation of statutory mandates by the division;
  (4) employee turnover;
  (5) information management systems, including public access to nonconfidential information;
  (6) the adoption and implementation of administrative rules by the commissioner; and
  (7) assessment of administrative violations and the penalties for those violations.
(b) Nothing in this section limits the authority of the state auditor under Chapter 321, Government Code.

Ed: This section was added by the 2001 Legislature.

SUBCHAPTER B. DEFINITIONS

Sec. 401.011. GENERAL DEFINITIONS.
In this subtitle:
(1) "Adjuster" means a person licensed under Chapter 4101, Insurance Code.

Ed: Section 4101.001 of the Insurance Code defines "adjuster" as an individual who investigates or adjusts losses on behalf of an insurer as an independent contractor or as an employee of an adjustment bureau, an association, a general property and casualty agent, an independent contractor, an insurer, or a managing general agent, or who supervises the handling of claims. However, Section 4101.002 provides that this definition does not apply to, among others, clerical or salaried personnel not engaged regularly in the negotiation of contested claims, attorneys, photographers, private detectives, estimators, and other experts.

(2) "Administrative violation" means a violation of this subtitle, a rule adopted under this subtitle, or an order or decision of the commissioner that is subject to penalties and sanctions as provided by this subtitle.
(3) "Agreement" means the resolution by the parties to a dispute under this subtitle of one or more issues regarding an injury, death, coverage, compensability, or compensation. The term does not include a settlement.
(4) "Alien" means a person who is not a citizen of the United States.

16

Ed: This term does not include "psychologist."

(18) "Employer" means, unless otherwise specified, a person who makes a contract of hire, employs one or more employees, and has workers' compensation insurance coverage. The term includes a governmental entity that self-insures, either individually or collectively.

Ed: This definition is not strictly applied throughout the Act. For example, Subchapter A of Chapter 406, dealing with coverage, does not exclusively apply to subscribers. To that end, Section 406.001 provides: "In this subchapter, 'employer' means a person who employs one or more employees." Other sections, too, use the term loosely due to subsequent legislative amendments. For example, in Section 408.042(c), dealing with the average weekly wage of employees with multiple employment, the use of the word "employer" is likewise not limited to subscribers.

(18-a) "Evidence-based medicine" means the use of current best quality scientific and medical evidence formulated from credible scientific studies, including peer-reviewed medical literature and other current scientifically based texts, and treatment and practice guidelines in making decisions about the care of individual patients.

Ed: This term was added by the 2005 Legislature and is used in the definition of "health care reasonably required." It arguably incorporates the concepts required for the admission of expert evidence under *E.I. Dupont de Nemours and Co., Inc. v. Robinson*, 923 S.W.2d 594 (Tex. 1995) or for a review of the sufficiency of the evidence under *Merrell Dow Pharmaceuticals v. Havner*, 953 S.W.2d 706 (Tex. 1997).

(19) "Health care" includes all reasonable and necessary medical aid, medical examinations, medical treatments, medical diagnoses, medical evaluations, and medical services. The term does not include vocational rehabilitation. The term includes:
   (A) medical, surgical, chiropractic, podiatric, optometric, dental, nursing, and physical therapy services provided by or at the direction of a doctor;
   (B) physical rehabilitation services performed by a licensed occupational therapist provided by or at the direction of a doctor;
   (C) psychological services prescribed by a doctor;
   (D) the services of a hospital or other health care facility;
   (E) a prescription drug, medicine, or other remedy; and
   (F) a medical or surgical supply, appliance, brace, artificial member, or prosthetic or orthotic device, including the fitting of, change or repair to, or training in the use of the appliance, brace, member, or device.

Ed: All health care must be provided by or at the direction of a doctor. Vocational rehabilitation is not included in this Act, but may be provided by the Texas Department of Assistive and Rehabilitative Services (DARS) (*See* Section 409.012).

Subsection (19)(F) was amended in 2007 by S.B. 458. The Senate Bill Analysis stated: "Currently, artificial limbs are not treated by all workers' compensation carriers as a physical structure of the body. Therefore, an accident resulting in a broken leg would be treatable under workers' compensation, but the same accident causing injury to an artificial leg would not cover repair or replacement of the artificial leg. The goal of the workers' compensation system is to get workers healthy and back to work. Senate Bill 458 ensures workers' compensation carriers treat artificial limbs as natural limbs." To that end, definitions of "Orthotic device" and "Prosthetic device" were added, as well as redefining "health care" to include the fitting of, change to, or repair to, the device. However, the amendments do not achieve the desired effect, or for that matter, any change to the law at all. The Bill did not provide a change to the definition of "injury," which still requires damage or harm to the "physical structure of the body" as opposed to an artificial limb. Further, by only amending the definition of "health care," the Bill still links the entitlement to such devices only to situations where the carrier would otherwise be liable for "health care." Pursuant to Section 408.021, a claimant is only entitled to "health care" if he sustains "a compensable injury." Thus, this amendment in no way "ensures workers' compensation carriers treat artificial limbs as natural limbs." Rather, it simply further defines certain terms and ensures that the carrier is liable for the replacement or repair of the device. As such the Appeals Panel's analysis in Texas Workers' Compensation Commission Appeal No. 91001, decided July 31, 1991, is still applicable.

# APPENDIX TAB 4

(c) Notwithstanding Subsection (a), the guaranty fund is not liable for the payment of any penalties assessed for any act or omission on the part of any person other than the guaranty fund.

### Sec. 407A.461. POSSESSION OF SECURITY BY GUARANTY FUND.

On the assumption of obligations on behalf of an insolvent group by the guaranty fund under the commissioner's determination, the guaranty fund is entitled to immediate possession of any assets of the insolvent group and any security deposited or the proceeds of any surety bond deposited by the insolvent group, along with all interest on the security. All assessments from members of the insolvent group shall be paid to the guaranty fund.

### Sec. 407A.462. RELEASE OF CLAIM INFORMATION TO GUARANTY FUND.

If the guaranty fund has assumed compensation obligations on behalf of an insolvent group, information on a workers' compensation claim may be released to the guaranty fund as provided by Section 402.084(a).

### Sec. 407A.463. GUARANTY FUND AS PARTY IN INTEREST.

(a) The guaranty fund is a party in interest in a proceeding involving a workers' compensation claim against an insolvent group whose compensation obligations have been paid or assumed by the guaranty fund.

(b) The guaranty fund has the same rights and defenses as the insolvent group, including the right to:
(1) appear, defend, or appeal a claim;
(2) receive notice of, investigate, adjust, compromise, settle, or pay a claim; and
(3) investigate, handle, or deny a claim.

### Sec. 407A.464. PREFERENCES.

(a) Benefit payments made by the guaranty fund under this subchapter are entitled to the same preference over other debts of the insolvent group as provided by law to benefit payments owed by the insolvent group to the person entitled to the benefits.

(b) The guaranty fund has the priority status provided by Section 8, Article 21.28, Insurance Code.

### Sec. 407A.465. SPECIAL FUND.

Monies advanced by the association under this chapter do not become assets of the insolvent group but constitute a special fund advanced to the commissioner, receiver, or other statutory successor only for the payment of compensation liabilities, including the costs of claim administration and legal costs.

## CHAPTER 408. WORKERS' COMPENSATION BENEFITS

## SUBCHAPTER A. GENERAL PROVISIONS

### Sec. 408.001. EXCLUSIVE REMEDY; EXEMPLARY DAMAGES.

(a) Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.

(b) This section does not prohibit the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence.

(c) In this section, "gross negligence" has the meaning assigned by Section 41.001, Civil Practice and Remedies Code.

(d) A determination under Section 406.032, 409.002, or 409.004 that a work-related injury is noncompensable does not adversely affect the exclusive remedy provisions under Subsection (a).

Ed: The right of recovery for a covered employee or legal beneficiary against the employer or agent or employee of employer is restricted solely to compensation benefits unless the employee dies as a result of an intentional act or the gross negligence

of the employer. In that situation, the spouse and children of the deceased can recover exemplary (punitive) damage from the employer. This exception to the general rule is required by Article 16, Section 26 of the Texas Constitution.

"Gross negligence" is defined in the Civil Practice and Remedies Code as "more than momentary thoughtlessness, inadvertence, or error of judgment. It means such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected."

Additionally, despite the exclusivity language, Article 1, Section 13 of the Texas Constitution preserves the right to sue the employer for intentional injury. Unless the employee elects to take the compensation remedy, the right to sue for intentional injury is not destroyed by a mere statute. Further, the Constitution further protects the spouse's right to sue the employer for loss of consortium due to intentional injury.

Except for the election against benefits allowed by an employee by Section 406.034, an agreement to waive benefits is void. Section 406.035. See Section 504.002 regarding these issues as related to political subdivisions.

Subsection (d) was added by the 2005 Legislature to address potential problems raised in the Supreme Court cases, *Walls Regional Hospital v. Bomar*, 9 S.W.3d 805 (Tex. 1999) and *Payne v. Glaen Hospital Hospital Corp.*, 28 S.W.3d 15 (Tex. 2000).

### Sec. 408.002. SURVIVAL OF CAUSE OF ACTION.
**A right of action survives in a case based on a compensable injury that results in the employee's death.**

Ed: The purpose of this section is not immediately clear in light of other sections in the 1989 Act. It is derived from Article 8306, §16 of the "old law." It has been held that the former section did not refer to suits against a covered employer and gives no right of recovery against the employer; rather it was "intended to preserve causes of actions arising from those accidents to which the [workers' compensation] insurance is applicable – i.e., injuries sustained in the course of employment, for which third parties are liable – and to prevent such causes of action against third persons not insured, from abatement by death." *Orange Ice, Light & Water v. Texas Compensation Ins. Co.*, 278 F. 8 (5th Cir 1922). In other words, if the employee is injured in the course and scope of his employment due to the negligence of a third party, and that injury subsequently results in death, the cause of action against the third party survives the employee's death. This ensures, among other things, that the carrier's subrogation interest is not eliminated.

Although the language of this section is different than that contained in Article 8306, §16, according to one of the authors of the 1989 Act, this section does not create a "substantive change from the prior law on survival of a cause of action." 1 MONTFORD, BARBER & DUNCAN, A GUIDE TO TEXAS WORKERS' COMP. REFORM, § 4.03, at 4-39 (1991).

Section 408.181(a) provides a derivative, but separate, cause of action to the beneficiaries for deaths that result from a compensable injury.

When an employee dies of causes unrelated to the compensable injury (except in the case of a specific injury), "the only claim that survive[s] his death [is] one for benefits accrued and unpaid from the date of his injury until the date of his death." *Antwine v. Dallas Independent School District*, 698 S.W.2d 226, 228 (Tex. App.-Dallas 1985, writ ref'd n.r.e.). *See also Bailey v. Travelers Insurance Co.*, 383 S.W.2d 562 (Tex. 1964); *Burris' Estate v. Associated Employers Insurance Co.*, 374 S.W.2d 223 (Tex. 1963); *Fitzhugh v. Associated Indemnity Corp.*, 746 S.W.2d 361 (Tex. App.-Eastland 1988, no writ). The Appeals Panel has held that an estate's right to accrued and unpaid benefits survives a non-compensable death. Texas Workers' Compensation Commission Appeal No. 950310, decided April 11, 1995.

However, regardless of the compensability of the death, Section 408.081(d) provides that "[a]n interest in *future* income benefits does not survive after the employee's death." Although it might be argued that impairment income benefits accrue on the date of maximum medical improvement if the impairment rating is known, pursuant to Section 408.121(a)(2), the decedent's entitlement to these benefits ends on "the date of the employee's death."

### Sec. 408.003. REIMBURSABLE EMPLOYER PAYMENTS; SALARY CONTINUATION; OFFSET AGAINST INCOME BENEFITS; LIMITS.
**(a)** After an injury, an employer may:
    **(1)** initiate benefit payments, including medical benefits; or
    **(2)** on the written request or agreement of the employee, supplement income benefits paid by the insurance carrier by an amount that does not exceed the amount computed by subtracting the amount of the income benefit payments from the employee's net preinjury wages.
**(b)** If an injury is found to be compensable and an insurance carrier initiates compensation, the insurance carrier

# APPENDIX TAB 5

insurance carrier. In the absence of an agreement, the court shall award to the attorney payable out of the insurance carrier's recovery:

(1)     a reasonable fee for recovery of the insurance carrier's interest that may not exceed one-third of the insurance carrier's recovery; and

(2)     a proportionate share of expenses.

(b)     An attorney who represents the claimant and is also to represent the subrogated insurance carrier shall make a full written disclosure to the claimant before employment as an attorney by the insurance carrier. The claimant must acknowledge the disclosure and consent to the representation. A signed copy of the disclosure shall be furnished to all concerned parties and made a part of the division file. A copy of the disclosure with the claimant's consent shall be filed with the claimant's pleading before a judgment is entered and approved by the court. The claimant's attorney may not receive a fee under this section to which the attorney is otherwise entitled under an agreement with the insurance carrier unless the attorney complies with the requirements of this subsection.

(c)     If an attorney actively representing the insurance carrier's interest actively participates in obtaining a recovery, the court shall award and apportion between the claimant's and the insurance carrier's attorneys a fee payable out of the insurance carrier's subrogation recovery. In apportioning the award, the court shall consider the benefit accruing to the insurance carrier as a result of each attorney's service. The total attorney's fees may not exceed one-third of the insurance carrier's recovery.

(d)     For purposes of determining the amount of an attorney's fee under this section, only the amount recovered for benefits, including medical benefits, that have been paid by the insurance carrier may be considered.

Ed: While the carrier is still required to pay an attorney's fee not to exceed one-third of its subrogation recovery to either the claimant's lawyer, the carrier's lawyer, or both, the fee only applies to the past subrogation lien amount, rather than any unpaid future amounts. On the other hand, carrier is now responsible for its proportionate share of expenses in recovering third party monies, said expenses to be paid out of the carrier's part of the recovery.

Where employee's attorney represents carrier for subrogation recovery, full disclosure of dual representation must be signed by employee, furnished to all parties, including the commission, and filed with the court prior to approval of judgment. The editors observe that a claimant's attorney representing both the claimant and insurance company has an inherent conflict of interest, particularly when third party proceeds are inadequate to fund fully the subrogation interest and the desires of the claimant. Carrier's own counsel should be employed independently to avoid conflict or violation of Texas Disciplinary Rules of Professional Conduct of the State Bar of Texas.

## Sec. 417.004. EMPLOYER LIABILITY TO THIRD PARTY.

In an action for damages brought by an injured employee, a legal beneficiary, or an insurance carrier against a third party liable to pay damages for the injury or death under this chapter that results in a judgment against the third party or a settlement by the third party, the employer is not liable to the third party for reimbursement or damages based on the judgment or settlement unless the employer executed, before the injury or death occurred, a written agreement with the third party to assume the liability.

Ed: If an employee, beneficiary or carrier sues a third party and recovers either by judgment or settlement, the employer does not have liability to the third party in the absence of an express written indemnity agreement creating liability executed prior to the accident. Indemnity agreements are widespread in industry, and if drafted properly, valid and enforceable.

## CHAPTER 418. CRIMINAL PENALTIES

## Sec. 418.001. PENALTY FOR FRAUDULENTLY OBTAINING OR DENYING BENEFITS.

(a)     A person commits an offense if the person, with the intent to obtain or deny payment of benefits, including medical benefits, under this subtitle or Subtitle C, for himself or another, knowingly or intentionally:

(1)     makes a false or misleading statement;

(2)     misrepresents or conceals a material fact; or